**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Miguel MARTINEZ–CIGARROA,
Defendant–Appellant.**

No. 93–2232.

United States Court of Appeals,
Tenth Circuit.

Jan. 24, 1995.

Submitted on the briefs: *

Michael G. Katz, Federal Public Defender, and James P. Moran, Asst. Federal Public Defender, Denver, CO, for defendant-appellant.

John J. Kelly, U.S. Atty., and Kelly H. Burnham, Asst. U.S. Atty., Las Cruces, NM, for plaintiff-appellee.

Before SEYMOUR, Chief Judge, McKAY and BALDOCK, Circuit Judges.

SEYMOUR, Chief Judge.

Appellant Miguel Martinez–Cigarroa was convicted on two counts of transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B) and aiding and abetting in violation of 18 U.S.C. § 2. Mr. Martinez–Cigarroa filed a pretrial motion to suppress certain evidence. The district court initially granted the motion to suppress, but upon the government's motion for reconsideration the court reversed its initial ruling and held the disputed evidence admissible. Mr. Martinez–Cigarroa appeals from the denial of his motion to suppress.[1] We affirm.

## I.

On November 20, 1992, United States Border Patrol Agent Jose Alvarado was on roving patrol, travelling south on Highway 185 in Dona Ana County, New Mexico, when he observed a white van travelling north.

Agent Alvarado testified that as he passed the white van he observed that the driver of the van was gripping the steering wheel tightly and was looking straight ahead. Agent Alvarado observed that the van had tinted rear windows and bore temporary Texas license plates. Based on his experience that smugglers of illegal aliens often use vehicles with temporary license plates, his observations of the driver, and the fact that highway 185 is often used to circumvent a border patrol checkpoint on Interstate 25, Agent Alvarado became suspicious and turned to follow the van. As he did so, Agent Alvarado testified, the van drastically reduced its speed and drifted from left to right. As Agent Alvarado continued to follow the van, he observed a gold Ford Thunderbird stopped by the side of the road. He testified that the occupant of the Thunderbird appeared to show "great interest" in the van and the border patrol car.[2] Agent Alvarado stopped the van and discovered several illegal aliens therein. At that point, he radioed to other border patrol agents that he suspected the gold Thunderbird was a scout car for the van, and requested that the vehicle be stopped. Another border patrol officer, Agent Clinton, observed a gold Thunderbird travelling north on Interstate 25 and stopped it in response to Agent Alvarado's request. The driver of the Thunderbird was Mr. Martinez–Cigarroa. Mr. Martinez–Cigarroa was arrested, and inside the car the

* After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

1. The government argues that Mr. Martinez–Cigarroa did not preserve this issue for appeal because he failed to renew his objection to the admission of the evidence at trial. Mr. Martinez–Cigarroa's motion to suppress encompassed "any and all evidence which arose from the stop" of the Thunderbird. Rec., vol. I, doc. 40, at 1. While the substance of the motion concentrated on the spousal privilege argument, the district court sua sponte raised the questions of the warrantless stop of the van and the car, and the argument at the hearing focused on these issues. The district court was thus fully aware of the basis for suppression urged by Mr. Martinez–Cigarroa on appeal. "[T]he overruling

of a pretrial motion to suppress the use at the trial of particular evidence preserves the point and renders it unnecessary again to object when such evidence is offered at the trial." *Lawn v. United States*, 355 U.S. 339, 353, 78 S.Ct. 311, 319–20, 2 L.Ed.2d 321 (1958); *United States v. Layne*, 973 F.2d 1417, 1420 n. 4 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1011, 122 L.Ed.2d 160 (1993). The issue is therefore properly before us.

2. On cross-examination, Agent Alvarado modified this statement, testifying that the occupant of the Thunderbird actually showed "a little bit more interest than the average citizen would." Rec., vol. II, Suppression Hearing at 16. Agent Alvarado also testified that, in his experience, the general public "will pay some attention to our marked vehicles." *Id.* The car's occupant thus apparently showed "a little bit more than some interest" in the passing cars, but not "a great deal" of interest.

border patrol agents found a notebook with the names of individuals corresponding to those of the illegal aliens discovered in the white van.

Prior to trial, Mr. Martinez–Cigarroa filed a motion to suppress "any and all evidence which arose from the stop of a 1984 Gold Thunderbird, driven by Miguel Martinez–Cigarroa, at milepost 19, on I–25, North of Radium Springs." Rec., vol. I, doc. 40 at 1. The premise of the motion was a violation of spousal privilege. At the hearing on the motion, however, the district court *sua sponte* raised the issue of the warrantless stop of the van and the car. The arguments at the hearing focused on this issue. At the conclusion of the hearing, the district court found that the stop of the van was illegal. The court also found that at the time the van was stopped, there was no proper basis for believing that the van and the Thunderbird were in any way connected. In its motion for reconsideration, the government argued that Mr. Martinez–Cigarroa lacked standing to contest the stopping of the van, but that because of the court's decision to raise the issue *sua sponte* at the hearing on the motion to suppress, the standing issue had not been properly presented. The district court agreed and vacated its earlier grant of Mr. Martinez–Cigarroa's motion to suppress, ordering that arguments on Mr. Martinez–Cigarroa's standing to contest the stopping of the van be heard on April 14, 1993. At that hearing, which was actually held on April 19, the court quickly concluded that Mr. Martinez–Cigarroa lacked standing to contest the stop of the van and denied the motion to suppress. On appeal, Mr. Martinez–Cigarroa does not contest the district court's denial of the motion to suppress with respect to evidence obtained from the stopping of the van. Rather, he contends that the notebook found in the gold Thunderbird, containing the names of the illegal aliens found in the van, should have been suppressed because the agents lacked reasonable suspicion to stop his car.

## II.

On appeal from the denial of a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous, and we consider the evidence in the light most favorable to the government. *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir. 1990). Questions of law, including the ultimate determination of the reasonableness of a search under the Fourth Amendment, are reviewed *de novo*. *United States v. Neu*, 879 F.2d 805, 807 (10th Cir.1989).

It is settled law that border patrol agents on roving patrol "may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles" are involved in criminal activity. *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975). Here, we are concerned with ascertaining whether this test was met with respect to the gold Thunderbird. Accordingly, we must examine the specific articulable facts and the rational inferences to be drawn from them that might justify Agent Alvarado's decision to order the Thunderbird stopped.[3] The government cites three articulable facts justifying the stop. These three facts, as found by the district court, are: 1) the car's occupant showed an interest in the passing van and the border patrol vehicle; 2) Agent Alvarado observed green out-of-state license plates resembling Colorado plates on the Thunderbird; and 3) Agent Alvarado did not recog-

---

3. The government contends that another agent, Agent Martinez, actually ordered the Thunderbird stopped, and that Agent Martinez had additional information justifying the stop which was not available to Agent Alvarado. The district court found as a matter of fact that it was Agent Alvarado who ordered the Thunderbird stopped. "Agent Clinton also verifies that the T–Bird was stopped merely because—or on the advice and information provided by Agent Alvarado.... [I]t's somewhat confusing, but it appears to the Court that whatever information Agent Martinez had at that time, he never conveyed that information to Agent Alvarado nor to Agent Clinton before the stop was made." Rec., vol. II, Suppression Hearing at 56–57. We agree with the District Court that the testimony is somewhat confusing, but we cannot say that the Court's finding is clearly erroneous. Accordingly, any additional information available to Agent Martinez is irrelevant to whether Agent Alvarado had sufficient grounds to order the stop of the Thunderbird.

nize the Thunderbird as a local vehicle.[4] Agent Alvarado was "entitled to assess the[se] facts in light of his experience," *Brignoni–Ponce*, 422 U.S. at 885, 95 S.Ct. at 2582, and we must assess his decision to have the Thunderbird stopped in light of the "totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1988). In performing this analysis, we must examine the facts individually in their context to determine whether rational inferences can be drawn from them which support the line of suspicion under investigation. *See Brignoni–Ponce*, 422 U.S. at 884–85, 95 S.Ct. at 2581–82; *Terry v. Ohio*, 392 U.S. 1, 21–23, 88 S.Ct. 1868, 1880–81, 20 L.Ed.2d 889 (1968). In other words, each fact must either be rationally suspicious in itself, or, despite being innocent on its face, must be rationally suspicious when viewed in context with the other articulable facts.

Here, the first arguably suspicious fact is the interest that the occupant of the Thunderbird allegedly showed in the passing van and border patrol vehicle. This interest is at least equally consistent with the reaction that might be expected from one whose car had broken down and who was hoping for some assistance. Moreover we note Agent Alvarado's testimony that the general public shows at least "some" interest in passing border patrol cars. Taking this fact in the light most favorable to the government, however, we conclude that it provides some slight support for Agent Alvarado's decision to stop the vehicle. However, we cannot conclude that the other two facts, the out-of-state license plates and Agent Alvarado's inability to identify the Thunderbird as a local vehicle, contribute measurably to the analysis. First, they are actually two different formulations of the same fact: a vehicle with out-of-state license plates is by definition not a local vehicle. Second, while out-of-state license plates may be a relevant consideration in some circumstances, *see, e.g., United States v. Barbee*, 968 F.2d 1026, 1029 (10th Cir. 1992), this factor in and of itself is not significantly probative of illegal activity and adds little to the reasonable suspicion equation,

see *United States v. Monsisvais*, 907 F.2d 987, 991 (10th Cir.1990). Therefore, the only arguably significant articulable fact before us upon which the decision to stop the Thunderbird could rationally have been based was the interest shown by its occupant in the passing van and the border patrol vehicle. Even if we add the marginally significant fact that the Thunderbird bore out-of-state license plates, the *Brignoni–Ponce* test is not met. Consequently, Agent Alvarado lacked reasonable suspicion to order the Thunderbird stopped, and the stop therefore violated the Fourth Amendment. The district court accordingly erred in denying Mr. Martinez–Cigarroa's motion to suppress the evidence found in his car.

## III.

■ Having determined that the district court erred in admitting the notebook containing the names of the illegal aliens, we must now consider whether the error was harmless. In performing this analysis, we ask "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, —— U.S. ——, ——, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); *United States v. March*, 999 F.2d 456, 463 (10th Cir.1993). We will reverse unless the state can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Sullivan*, —— U.S. at ——, 113 S.Ct. at 2081 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

Considering the trial record as a whole, we conclude that the introduction of the notebook was harmless beyond a reasonable doubt. We base our decision on the following evidence. Two of the illegal aliens discovered in the van identified Mr. Martinez–Cigarroa as the man who met them in Mexico to help them enter the United States illegally. One of these aliens testified that

---

4. The government argues that the district court erred in finding that these three facts were the only facts available to Agent Alvarado when he

ordered the Thunderbird stopped. We are not persuaded that the district court's findings in this regard are clearly erroneous.

Mr. Martinez–Cigarroa drove him to the river in a gold Ford which he identified as the gold Thunderbird Agent Alvarez believed to be the scout car. A used car salesman testified that Mr. Martinez–Cigarroa had purchased the van using a different name. Agent Martinez testified Agent Alvarez told him that Alvarez remembered the Thunderbird from one of his prior lookouts. One of the other agents testified as to Mr. Martinez–Cigarroa's involvement in a large illegal-alien smuggling operation based on information the agent had received from Mr. Martinez–Cigarroa's wife. It is true that Mr. Martinez–Cigarroa's wife denied on the stand that her husband was involved in alien smuggling, explaining that she had set him up because she was angry. Even accepting her testimony, the remaining evidence is strong enough to render harmless beyond a reasonable doubt the admission of the list of the alien's names and hotels found in the Thunderbird. In view of the direct testimony of the two aliens identifying Mr. Martinez–Cigarroa and placing him at their hotels, the list naming them and their hotels must be considered cumulative to the testimony of those two individuals.

We AFFIRM the judgment of the district court.

BALDOCK, Circuit Judge, concurring.

I concur in this court's affirmance of the district court. However, I write separately because I believe the district court correctly found Agent Alvarado's stop of the Thunderbird was founded upon reasonable suspicion. I would affirm that finding for the reasons that follow.

This court correctly notes that we must employ a totality-of-the-circumstances approach to determine whether the stop was based on reasonable suspicion. *See United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989). Under the totality-of-the-circumstances approach, we consider whether the articulated facts in aggregate support the stop. *See id.* at 9, 109 S.Ct. at 1586. Even if each fact, viewed separately, "is not by itself proof of any illegal conduct," the facts considered as a whole may nonetheless "amount to reasonable suspicion." *Id.; see also Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) (noting that "a series of acts, each of them perhaps innocent in itself ... taken together warranted further investigation"). Therefore, in employing the totality-of-the-circumstances approach, we do not "pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious." *United States v. Lopez–Martinez,* 25 F.3d 1481, 1484 (10th Cir.1994). Rather, we consider whether the individual facts in aggregate yield reasonable suspicion. *Id.*

In the instant case, the government articulates three facts in support of the stop: 1) Defendant displayed unusual interest in the van and border patrol vehicle; (2) the Thunderbird bore out-of-state license plates; and (3) Agent Alvarado did not recognize the Thunderbird as a local vehicle.

Purporting to apply the totality-of-the-circumstances approach, this court individually discredits each fact articulated by the government, and ignores the sum of the three. Indeed, this court simply "pigeonhole[s] each purported fact as either consistent with innocent travel or manifestly suspicious," *id.,* in contravention of the totality-of-the-circumstances analysis. I conclude that each fact supports the stop and, in aggregate, yields reasonable suspicion.

First, this court acknowledges Defendant's interest in the van supported the stop. This court characterizes the support as "slight," however, reasoning that Defendant's interest in the van "is at least equally consistent with the reaction that might be expected from one whose car had broken down and who was hoping for some assistance." Op. at 909. This reasoning is purely hypothetical, however, and discounts the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions. *See Sokolow,* 490 U.S. at 8, 109 S.Ct. at 1585–86 (law enforcement officers entitled to make "common-sense conclusions about human behavior") (quoting *U.S. v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); *Lopez–Martinez,* 25 F.3d at

1484 ("Supreme Court has expressly acknowledged law enforcement officers' prerogative to perceive and articulate meaning in actions that, to the untrained observer, appear innocuous.") (citing *Brown v. Texas*, 443 U.S. 47, 52 & n. 2, 99 S.Ct. 2637, 2641 n. 2, 61 L.Ed.2d 357 (1979)). Based on his experience as a law enforcement officer and his on-the-scene observations, Agent Alvarado determined that Defendant's above-average interest in the van was suspicious. Under *Sokolow*, Agent Alvarado was entitled to draw such a conclusion, and I believe his on-the-scene determination provides much support for the stop.

Next, this court concludes the fact that the Thunderbird bore out-of-state plates "adds little to the reasonable suspicion equation." Op. at 909. Further, this court dismisses out-of-hand the fact that Agent Alvarado did not recognize the Thunderbird as a local vehicle. To dismiss both facts, this court subsumes them into one fact saying they "are actually two different formulations of the same fact...." Op. at 910. As a result, this court considers only the Thunderbird's out-of-state license plates, which appears rather benign standing alone. This analysis misapplies the totality-of-the-circumstances test.

When both facts are considered together, it is clear Agent Alvarado was properly suspicious of the facts that the Thunderbird bore out-of-state plates and that he did not recognize the Thunderbird as a local vehicle. These two facts, considered together with Defendant's interest in the van, support the stop. *See United States v. Leyba*, 627 F.2d 1059, 1064 (10th Cir.) ("That the vehicle bore out-of-state plates ... is ... entitled to some limited consideration because agent Martinez did not recognize the vehicle as local traffic from the area."), *cert. denied*, 449 U.S. 987, 101 S.Ct. 406, 66 L.Ed.2d 250 (1980).

In sum, this court purports to apply the totality-of-the-circumstances test. However, in doing so the court gives too little weight to each fact and no weight to the sum of the three. *See Lopez–Martinez*, 25 F.3d at 1487 (considering facts in isolation "ignores the Supreme Court's direction to examine 'the whole picture'"). When all three articulated facts are considered together, as they must be under the totality-of-the-circumstances approach, and viewed in the light most favor-

able to the government, they provide ample support for Agent Alvarado's decision to stop the Thunderbird. *See Brignoni–Ponce*, 422 U.S. at 885, 95 S.Ct. at 2582 (driver's behavior and aspects of vehicle are factors that may justify reasonable suspicion). Thus, I believe the district court did not err in concluding Agent Alvarado based his decision to stop the Thunderbird upon reasonable suspicion. I would affirm the district court's denial of Defendant's motion to suppress the evidence found in the Thunderbird. I would therefore not reach the harmless error analysis. I concur in the result.

McKAY, Circuit Judge, dissenting:

I agree with all of the court's opinion except Part III. Because I do not believe that the error was harmless, I respectfully dissent.