**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles John McCARTY, Defendant–Appellant.**

No. 95–8030.

United States Court of Appeals, Tenth Circuit.

April 24, 1996.

Christopher A. Crofts, Assistant United States Attorney, District of Wyoming, Casper, Wyoming, (David D. Freudenthal, United States Attorney, District of Wyoming, Casper, Wyoming, with him on the brief) for Plaintiff–Appellee.

Maynard D. Grant, Grant & Newcomb, Cheyenne, Wyoming, for Defendant–Appellant.

Before KELLY, BARRETT and JONES[†], Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Mr. McCarty appeals his conviction on five counts of federal firearms violations alleging that the search upon which his convictions are predicated violated the Fourth Amendment of the United States Constitution; the district court violated his Sixth Amendment right to confrontation by prohibiting cross examination of two prosecution witnesses for bias; and the district court erred in applying the Sentencing Guidelines by ordering Mr. McCarty to serve his federal sentence consecutively to a previously imposed state criminal sentence.

*Background*

In October 1991, Mr. McCarty was arrested and charged with assaulting his former girlfriend and her brother. He pled guilty to reckless endangering, a misdemeanor for which he served a year in prison, and felony aggravated assault and battery, for which the state court placed him on probation for five years and prohibited Mr. McCarty from either contacting his former girlfriend or possessing firearms. In March 1993, the former girlfriend informed state officials that she had received mail apparently sent by Mr. McCarty. After the Wyoming State Crime Lab discovered Mr. McCarty's fingerprint on a portion of the suspect mail, a search warrant was issued to the Worland police alleging Mr. McCarty had violated a condition of his probation by contacting the victim by letter. During the search of Mr. McCarty's residence, police discovered a rifle equipped with a silencer. 11 R. 71–72. On April 13, 1993, the state court revoked Mr. McCarty's probation and sentenced him to a five to seven year term of imprisonment.

In March 1994, on the basis of the search of the residence, Mr. McCarty was charged with making a false statement in connection with the purchase of a firearm, 18 U.S.C. §§ 922(a)(6), 924(a)(1), receiving a firearm while under indictment for a felony, *id.* §§ 922(n), 924(a)(1), possession of a sawed-off rifle, 26 U.S.C. §§ 5841, 5845, 5861(d), 5871, possession of a silencer, *id.* §§ 5841, 5845, 5861(d), 5871, and possession of a silencer not identified with a serial number, *id.* §§ 5841, 5842, 5845, 5861(i), 5871. In December 1994, Mr. McCarty was convicted of all five federal firearms violations and sentenced to 71 months, to be served consecutively to his state sentence received for his assault conviction.

[†] The Honorable Nathaniel R. Jones, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

*Discussion*

## A. Fourth Amendment

In reviewing the district court's denial of a motion to suppress, we apply the clearly erroneous standard of review to the district court's findings of fact and view the evidence in the light most favorable to the government. *United States v. Baker,* 30 F.3d 1278, 1280 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 273, 130 L.Ed.2d 190 (1994). The reasonableness of a search and seizure under the Fourth Amendment is a question of law we review de novo. *United States v. Martinez–Cigarroa,* 44 F.3d 908, 910 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1386, 131 L.Ed.2d 238 (1995). To assess the validity of a search warrant under the Fourth Amendment, we review whether the totality of the circumstances in the affidavit provided the judicial officer " 'a substantial basis for finding a fair probability that contraband or other evidence of a crime would be found' " at the searched premises. *Baker,* 30 F.3d at 1280 (quoting *United States v. Hager,* 969 F.2d 883, 887 (10th Cir.), *cert. denied,* 506 U.S. 964, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992)).

This case involves the question of whether a suspected violation of a condition of probation constitutes probable cause for which a search warrant may issue, particularly where the probation violation in question would not constitute a crime beyond the confines of the defendant's probation agreement. This presents a question of first impression in this circuit. To assist our assessment of the reasonableness of the search in this case, we turn first to an analysis of a probationer's rights under the Fourth Amendment.

The Fourth Amendment protects a probationer's home, like that of any other citizen, from unreasonable searches. *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987). However, the special needs and benefits presented by a state's probation system compels a probationer to occupy the unusual status of a citizen with only conditional, rather than absolute liberty. *Id.* at 873–74, 107 S.Ct. at 3168–69; *see also United States v. Lewis,* 71 F.3d 358, 361–62 (10th Cir.1995). It is clear that a probation officer may search a proba-tioner's home or even arrest a probationer without a warrant and with less than probable cause. *Griffin,* 483 U.S. at 877–78, 107 S.Ct. at 3170–71; *Lewis,* 71 F.3d at 362. It is equally well established that a probation officer cannot act as a "stalking horse" on behalf of police to assist police in evading the Fourth Amendment's warrant requirement. *United States v. Watts,* 67 F.3d 790, 793–94 (9th Cir.1995); *United States v. Martin,* 25 F.3d 293, 296 (6th Cir.1994). According to Wyoming law, a probation officer may arrest a probationer without a warrant "if the agent has probable cause to believe the person has violated the terms of his probation or parole," Wyo.Stat. § 7–13–411(a)(iii), or conduct a warrantless search of a probationer's home upon reasonable suspicion of probation violation, *Pena v. Wyoming,* 792 P.2d 1352, 1357 (Wyo.1990).

In many cases, the police may arrest a probationer or search a probationer's premises without a warrant at the behest of the parole officer. *See, e.g., Lewis,* 71 F.3d at 361, 363 (search by parole officers and police, who were acting at the request of parole officers but without a warrant, did not offend the Fourth Amendment); *United States v. Shephard,* 21 F.3d 933, 936 n. 6 (9th Cir.1994) (under Montana law, violation of probation constitutes an offense for which police may arrest probationer without a warrant but at the written request of parole officer); *United States v. Cardona,* 903 F.2d 60, 66 (1st Cir.1990) ("police officers and parole officers are fungible when the former serve as mere implimentors of decisions already made by the latter"), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991). Such is the case in Wyoming, where state law empowers the police to "arrest without [a] warrant an alleged probation or parole violator after receiving a written statement from a probation and parole agent setting forth that the probationer or parolee has, in the judgment of the probation and parole agent, violated the conditions of his probation or parole." Wyo.Stat. § 7–13–411(b). Furthermore, in Wyoming, to determine if a probationer has violated a condition of his probation, the police may conduct a warrantless search of probationer's home on

less than probable cause and without written consent of the probation officer if accompanied by the probation officer. *Sanderson v. Wyoming,* 649 P.2d 677, 678–79 (Wyo.1982). This is true even where the police initiate contact with the probation officer and only the probation officer had received consent to search. *Id.* By informing the probation officer of an alleged probation violation and conducting the search in the presence of the probation officer, the police "become the probation officer's agents when they gave assistance to the probation officer at her request." *Id.* at 679.

■ This case, however, does not involve a probation officer's warrantless search of a probationer's home but rather a search conducted by the police pursuant to a warrant. Accordingly, the question that concerns us is whether, in light of Mr. McCarty's status as a probationer, the warrant satisfies the probable cause requirement of the Fourth Amendment.

■ Mr. McCarty concedes that the affidavit upon which the warrant was based contained sufficient grounds under *Griffin* to allow a Wyoming probation officer to conduct a warrantless search of Mr. McCarty's home. Aplt.Br. at 13. However, Mr. McCarty argues that because mailing a letter is not *per se* illegal, Mr. McCarty's alleged parole violation constituted a non-criminal act that is insufficient as a matter of law to constitute probable cause for which a search warrant may issue. We disagree. Violation of probation constitutes indirect contempt of court under Wyoming law and constitutes a crime punishable by imprisonment. Criminal contempt emanates from the common law axiom that a court inherently possesses the power to punish transgressions of its orders. *See generally International Union, UMWA v. Bagwell,* —— U.S. ——, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (discussing case law development of criminal contempt). Although not codified in the Wyoming statutes, criminal contempt finds solid support in Wyoming case law, *see e.g., Connors v. Connors,* 769 P.2d 336 (Wyo.1989); *Skinner v. Wyoming,* 838 P.2d 715 (Wyo.1992), and is specified in the Wyoming Rules of Criminal Procedure, where is it defined as an act "not committed

in the immediate presence of the court, and of which it has no personal knowledge, including ... [d]isobedience of any lawful judgment, order, or process of the court." Wyo. R.Crim.P. 42(a)(2)(C). Conviction of criminal contempt may result in imprisonment for up to six months if the defendant is convicted by a judge, or longer if convicted by a jury. Wyo.R.Crim.P. 42(e). The act of mailing a letter, unaffiliated with court-ordered probationary requirements, generally is not a crime; however, Mr. McCarty's letter defied the court's Judgment and Sentence prohibiting Mr. McCarty from contacting his former girlfriend, and therefore constituted indirect criminal contempt. *See* Aplt.App. A at 1–2.

■ In this case, the Worland police had a substantial basis for believing that Mr. McCarty had violated a condition of his probation and in so doing committed criminal contempt. Mr. McCarty's former girlfriend informed the Washakie County Attorney that she had received mail which she believed was sent by Mr. McCarty. A suspect piece of mail contained Mr. McCarty's fingerprint. The totality of these circumstances, contained in the affidavit, Aplt.Br. app. C, constituted probable cause of the crime of indirect criminal contempt, namely Mr. McCarty's violation of his probation. Had the police at that point informed Mr. McCarty's probation officer of the result of the analysis, the probation officer could have conducted a warrantless search of probationer's residence for evidence concerning possible parole violations. *See Griffin,* 483 U.S. at 878, 107 S.Ct. at 3171. However, the police did not contact Mr. McCarty's probation officer but rather prepared the appropriate affidavit and presented it to a detached and neutral magistrate, who determined that probable cause existed to support a search of Mr. McCarty's residence and vehicle. The police were not obligated to contact Mr. McCarty's probation officer but could act pursuant to the warrant.

■ Finally, the seizure of the rifle and silencer from Mr. McCarty's house fits squarely within the plain view doctrine. The police were lawfully on the premises and the object seized was in plain view. Because the

object's incriminating character was immediately apparent, the seizure was permissible. *See United States v. Janus Indus.*, 48 F.3d 1548, 1554-55 (10th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995).

■ Even assuming that the warrant was defective, we would affirm the district court's denial of Mr. McCarty's motion to suppress based on the Supreme Court's holding in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon,* the Supreme Court held that the exclusionary rule would not apply where an officer acts "in objectively reasonable reliance on a subsequently invalidated search warrant...." *Id.* at 922, 104 S.Ct. at 3420. In this case, the police acted in good faith within the scope of a warrant which they objectively believed to be valid. The engine that drives Fourth Amendment protection is prevention and deterrence. In cases "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.... there is no police illegality and thus nothing to deter." *Id.* at 920-21, 104 S.Ct. at 3419. *Cf. Cardona,* 903 F.2d at 66 ("the source of the decision to act, not the robotic agent who implements it, is ultimately responsible for the decision's consequences"). No evidence indicates that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," in which case reliance upon the warrant could not have been in good faith. *Brown v. Illinois,* 422 U.S. 590, 611, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring).

### B. Sixth Amendment

■ We generally review the district court's evidentiary rulings for an abuse of discretion. *United States v. Scott,* 37 F.3d 1564, 1581 (10th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 773, 130 L.Ed.2d 669 (1995). An alleged violation of the Sixth Amendment right to confrontation, however, presents a question of law that we review de novo. *Hatch v. Oklahoma,* 58 F.3d 1447, 1467 (10th Cir.1995). Generally, "a criminal defendant states a violation of the Confronta-

tion Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

In this case, the district court prevented Mr. McCarty from pursuing particular lines of questioning during cross-examination of two prosecution witnesses, Ms. Cindy Johnson, Mr. McCarty's former probation officer, and Ms. Karma Andricci, Mr. McCarty's former girlfriend and the victim of the state crime for which Mr. McCarty was initially placed on probation. At oral argument, Mr. McCarty conceded that the district court correctly curtailed his cross-examination of Ms. Andricci. We therefore do not address his arguments concerning this witness.

■ Mr. McCarty alleges that the district court violated his right to confrontation by prohibiting him from effectively cross-examining Ms. Johnson, his former probation officer, in an attempt to demonstrate bias. In this case, the government called Ms. Johnson to compare the credibility of Mr. McCarty with that of Mr. George Vigil, a witness who testified against Mr. McCarty and for whom Ms. Johnson also served as probation officer. Defense counsel objected and advised the court that he intended to cross-examine Ms. Johnson based on information he had received from his client, namely that Ms. Johnson, while serving as Mr. McCarty's probation officer, advised Mr. McCarty that he would experience more favorable probation treatment if he engaged in sexual intercourse with her. Mr. McCarty allegedly tape recorded this conversation with Ms. Johnson but was unable to produce the recording to substantiate the allegations. Aplt.Br. at 23 n. 5. The court summoned Ms. Johnson and counsel into chambers to pursue the inquiry. 13 R. 76. After questioning Ms. Johnson regarding Mr. McCarty's allegations, the court concluded that Mr. McCarty's allegations were unsubstantiated and refused to permit such cross-examination of Ms. Johnson. 13 R. 78-79, 81, 86-87. When questioning resumed, Ms. Johnson testified that

she believed Mr. Vigil to be more credible than Mr. McCarty. 13 R. 88.

 The trial judge has the power to exclude evidence when it is offered in an impermissible manner or is unduly prejudicial under Rule 403. "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about ... harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435. The Confrontation Clause guarantees Mr. McCarty "only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (emphasis added).

Having reviewed the record and Mr. McCarty's contentions, we can say that the district court neither abused its discretion nor violated Mr. McCarty's Sixth Amendment right to confrontation by circumscribing Mr. McCarty's intended cross-examination of Ms. Johnson. The district court prohibited a particularly invasive, injurious line of questioning concerning serious and unsubstantiated allegations of sexual impropriety. In light of the incredibility of the allegation, Mr. McCarty's prior felony convictions, 13 R. 10, and his admitted instances of misleading the court, 12 R. 159–60, the trial judge was justified in preventing Mr. McCarty from cross-examining Ms. Johnson on serious allegations of sexual misconduct substantiated only by Mr. McCarty himself.

### C. Sentencing Guidelines.

 In April 1993, the state court of Wyoming revoked Mr. McCarty's probation, ordered entry of his 1991 conviction for aggravated assault and battery and imposed a sentence of five to seven years in the state penitentiary. While serving his state sentence, Mr. McCarty was sentenced in the present matter to a term of 71 months to be served consecutively to his state sentence. 3 R. docs. 102, 104. Mr. McCarty contends that the district court misapplied the Sentencing Guidelines [1] by imposing his federal sentence consecutively to his state sentence. We review de novo the district court's interpretation and application of the Sentencing Guidelines and apply the clearly erroneous standard to review the court's factual determinations at sentencing. *United States v. Johnson,* 42 F.3d 1312, 1320 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995).

 In general, a district court has broad discretion in choosing to sentence a defendant to a consecutive or concurrent sentence. *See* 18 U.S.C. § 3584(a), (b). However, the court's discretion is confined by consideration of the factors in 18 U.S.C. § 3553(a) and USSG § 5G1.3.[2] *United States v. Shewmaker,* 936 F.2d 1124, 1127 (10th Cir.1991), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992). In this case, the district court applied USSG § 5G1.3(c), referring to Application Note 4 for guidance, to order Mr. McCarty's federal sentence served consecutively to his state sentence. 16 R. 58–59. Mr. McCarty contends that USSG § 5G1.3(b) rather than USSG § 5G1.3(c) applies because the undischarged term of Mr. McCarty's state sentence resulted from offenses that were fully taken into account in the determination of

---

1. All references to the Sentencing Guidelines are to the 1993 version in effect at the time Mr. McCarty was sentenced.

2. USSG § 5G1.3 provides in relevant part:
 (a) ....
 (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run

concurrently to the undischarged term of imprisonment.
 (c) (Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.
 USSG § 5G1.3.
 The parties agree that USSG § 5G1.3(a) does not apply. *See* Aplt.Br. at 34.

the offense level for the instant offense. *See* Aplt.Br. at 34–36; USSG § 5G1.3(b).

We disagree. Subsection (b) does not apply because Mr. McCarty's Wyoming offense has not been "fully taken into account in the determination of the offense level for the instant offense." USSG § 5G1.3(b). The district court assigned Mr. McCarty a Base Offense Level ("BOL") of 20, 16 R. 57, by applying USSG § 2K2.1(a)(4)(B), which mandates a BOL of 20 "if the defendant ... is a prohibited person, and the offense (of conviction) involved a firearm listed in 26 U.S.C. § 5845(a)." *See* USSG § 2K2.1(a)(4)(B). A "prohibited person" is defined as "anyone who: (i) is under indictment for, or has been convicted of, a 'crime punishable by imprisonment for more than one year.'" USSG § 2K2.1, comment. n. 6. Assigning Mr. McCarty a BOL of 20 because he was a prohibited person in possession of a firearm does not take into account the nature, type, aggravating or mitigating circumstances or any other substantive aspect of Mr. McCarty's previous crime. Had the district court applied USSG § 2K2.1(a)(4)(A), which mandates a BOL of 20 "if the defendant had one prior felony conviction of ... *a crime of violence*" (emphasis added), or USSG § 2K2.1(a)(3), which assigns a BOL of 22 "if the defendant had one prior felony conviction of ... *a crime of violence* ... and the instant offense involved a firearm" (emphasis added), a stronger argument could be made that Mr. McCarty's Wyoming conviction was fully taken into account due to the consideration of its violent nature.

Similarly, the district court's utilization of USSG § 2K2.1(b)(5) to increase Mr. McCarty's offense level from 20 to 24 did not fully take into account Mr. McCarty's state law conviction. USSG § 2K2.1(b)(5) instructs the district court to increase a defendant's offense level by 4 points "[i]f the defendant used or possessed any firearm ... in connection with another felony offense." USSG § 2K2.1(b)(5). The district court properly applied subsection (b)(5) by noting that Mr.

McCarty used a firearm in connection with an additional felony offense, namely aggravated assault and battery. 16 R. 57. Increasing a defendant's offense level by noting that a defendant used a firearm to commit a previous felony does not take into account the substantive aspects of the underlying felony any more than noting that the felony occurred in the afternoon, on a sunny day or in an urban area.

Based upon our conclusion that the district court properly applied § 5G1.3(c), Mr. McCarty alternatively invokes the reasoning set forth in the presentence report ("PSR") to argue that the imposition of a consecutive federal sentence under USSG § 5G1.3(c) constituted an abuse of discretion by the district court. Aplt.Br. at 36 n. 12. In the PSR, the probation officer noted the applicability of USSG § 5G1.3(c) to this case, but advised the court to consult Application Note 3 for guidance in applying § 5G1.3(c). 4 R. 11 (PSR 11 at ¶ 45). The district court rejected the PSR's invocation of Application Note 3 and instead chose to look to Application Note 4[3] for guidance. 16 R. 58–59.

Suggestions contained in the PSR are advisory only. The district court retains discretion in choosing whether to impose a consecutive or concurrent sentence, 18 U.S.C. § 3584, subject to the constraints of USSG § 5G1.3 and pursuant to consideration of the factors listed in 18 U.S.C. § 3553(a). The plain language of Application Note 4 squarely fits the facts of this case. Furthermore, the record reflects that the district court expressly considered the statutory factors embodied in 18 U.S.C. § 3553(a), such as the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C). *See* 16 R. 78–80. We can-

---

3. Application Note 4 provides:
 If the defendant was on federal or state probation ... at the time of the instant offense, and has had such probation ... revoked, the sentence for the instant offense should be imposed to be served consecutively to the term imposed for the violation of probation ... in order to provide an incremental penalty for the violation of probation....
 USSG § 5G1.3, comment. n. 4.

not say that the court abused its discretion in disregarding the suggestions of the probation officer in the PSR and applying Application Note 4 to impose a consecutive federal sentence upon Mr. McCarty.

AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, concurring.

I fully concur in Parts B and C of the opinion, and likewise concur in Part A, excepting the last paragraph. I write separately to briefly explain my concern.

The court's discussion on [p. 949] of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) is unnecessary after determining that the warrant and search, relating to evidence of a crime, were valid. To reach this issue the court must assume that the warrant was defective, and under the facts of this case, the warrant could be defective only if it did not relate to the commission of a crime. As we have not decided the broader issue of whether a warrant *must* relate *only* to the commission of a crime to satisfy the Fourth Amendment, it is unwise to assume such in dictum. Further, it is not at all clear to me, given the court's assumption, valid or not, that the doctrines of *Leon* and related cases would apply here.