**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**February 8, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JASON ALAN CAPPELLI; VINCENT C.
TODD,

     Plaintiffs - Appellants,

v.

WILLIAM HOOVER, Sergeant,
Lakewood Police Department; JIMMY
TORSAK, Detective, Lakewood Police
Department; MICHAEL GRIFFITH,
Agent, Lakewood Police Department;
JANNA SCHMMELS, Agent, Lakewood
Police Department; JOHN
HICKENLOOPER, Governor of the State
of Colorado; RICK RAEMISCH,
Executive Director of the Colorado
Department of Corrections; JIM COOPER,
a Community Parole Officer; MATTHEW
STEGNER, Commander, Lakewood Police
Department; THEODORE MCNITT, a
Commander, Lakewood Police
Department; JEFF SCHRADER, Sheriff of
Jefferson County Colorado; MELISSA
ROBERTS, Director of Adult Parole,
Colorado Department of Corrections;
SHEFALI PHILLIPS, a Community Parole
Officer; WESLEY TRISSEL, a
Community Parole Officer; DAN
MCCASKY, Chief of Police, Lakewood
Police Department

    Defendants - Appellees.

No. 21-1110
(D.C. No. 1:17-CV-01439-PAB-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

Jason Cappelli and Vincent Todd, a Colorado parolee and his sponsor, appeal the district court's entry of judgment against them on claims stemming from a search of their home that led to Cappelli's arrest for parole violations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Colorado released Cappelli from custody to live with Todd on parole. The state conditioned this arrangement on Cappelli's and Todd's agreement to allow Cappelli's Community Parole Officer (CPO) to visit and search their house at any time. Cappelli's CPO, Defendant Matthew Stegner, did so on April 19, 2019. Another CPO, Defendant Shefali Phillips, and officers from the Lakewood Police Department accompanied him and participated in the search.

The officers found a video doorbell on the house and a stun gun inside Todd's locked bedroom. Stegner arrested Cappelli, alleging parole violations based on the presence of these items on the premises.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

The parole board acquitted Cappelli of the parole violation charges.  Cappelli and Todd then sued under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.  As relevant to this appeal, they both claimed the search violated their Fourth Amendment rights because the officers did not have a warrant and lacked reasonable suspicion either of them had committed an offense.  Cappelli also alleged that his detention violated his Fourth Amendment rights because the officers lacked probable cause to believe he had committed a parole violation, and that the procedures for returning a $30 booking fee collected from him at the time of his arrest violated his Fourteenth Amendment due process rights because they were too onerous.

Ruling on a motion to amend the complaint, the district court denied leave to amend and ordered dismissal of all the claims except the unlawful search claims against the Lakewood officers who participated in the search.  It reasoned the complaint did not, and with the proposed amendments would not, state any other claims upon which relief could be granted.  The court later granted summary judgment in favor of the Lakewood officers by adopting the magistrate judge's report and recommendation and entered a final judgment in favor of all Defendants.  This appeal followed.

## II.  Discussion

We review de novo a district court's dismissal for failure to state a claim.  *See VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1169 (10th Cir.), *petition for cert. filed* (U.S. Dec. 23, 2021) (No. 21-933).  "We generally review for abuse of

3

discretion a district court's denial of leave to amend a complaint . . . ." *Johnson v. Spencer*, 950 F.3d 680, 720 (10th Cir. 2020) (brackets and internal quotation marks omitted).  But a "district court may deny leave to amend where amendment would be futile." *Doe v. Woodard*, 912 F.3d 1278, 1302 n.28 (10th Cir. 2019) (internal quotation marks omitted).  And "when [the district court's] denial is based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *Johnson*, 950 F.3d at 720 (internal quotation marks omitted).

"We review an order granting summary judgment de novo, giving no deference to the district court's decision and applying the same standards as the district court." *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1221 (10th Cir. 2021).  "In doing so, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (brackets and internal quotation marks omitted).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## A.  Fourth Amendment Unlawful Search Claims

Cappelli and Todd claim CPOs Stegner and Phillips, and the Lakewood officers, violated their Fourth Amendment rights by searching their home without a warrant and without any reasonable suspicion to believe either Cappelli or Todd had committed an offense.

**1. Dismissal of the Fourth Amendment Unlawful Search Claims Against Stegner and Phillips**

The district court dismissed the claims against CPOs Stegner and Phillips because under the totality-of-the-circumstances exception to the Fourth Amendment's warrant and probable cause requirements, "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee," *Samson v. California*, 547 U.S. 843, 857 (2006), at least where the search is "authorized by state law," *United States v. Matthews*, 928 F.3d 968, 976 (10th Cir. 2019) (internal quotation marks omitted).[1]  And the district court found that Colorado law authorized CPOs Stegner and Phillips to conduct the search, citing Colo. Rev. Stat. § 17-2-201(5)(f)(I)(D) and *People v. McCullough*, 6 P.3d 774, 778 (Colo. 2000), *abrogated in part on other grounds by United States v. Knights*, 534 U.S. 112 (2001).

Cappelli and Todd argue, without citation, that the district court erred in reaching this conclusion because Colorado authority it relied on applies "only to discretionary parole," Aplts. Opening Br. at 9, and their complaint alleged Cappelli was on "mandatory parole," Aplts. App., vol. 2 at 12.  But § 17-2-201(5)(f)(I)(D) requires parolees to "permit residential visits by the [CPO], and allow the [CPO] to make searches of his or her person, residence, or vehicle," "[a]s a condition of *every*

---

[1] To the extent Cappelli and Todd argue that an earlier case, *United States v. Knights*, 534 U.S. 112, 121–22 (2001), establishes a different rule—namely, that warrantless searches of a parolee's home must be supported by a reasonable suspicion that the parolee engaged in prohibited conduct—we reject this argument as contrary to *Samson*.

parole." (emphasis added).  And *McCullough* makes no mention of a distinction between mandatory and discretionary parole.  It instead confirms that a parolee's consent to searches by the CPO must "be included in *every* parole agreement." 6 P.3d at 778 (emphasis added).  It also held that the law gives CPOs "authority to conduct routine searches of a parolee and his possessions as part of their supervisory authority and without requiring that they first possess reasonable grounds to believe that a parole violation has occurred."  *Id.* (internal quotation marks omitted).

Because Colorado law authorized Stegner and Phillips to conduct the search without any reasonable suspicion, we affirm the district court's conclusion that the complaint did not, and with the proposed amendments would not, state a viable Fourth Amendment claim against these Defendants related to the search.

**2.  Grant of Summary Judgment to the Lakewood Police Officers on the Fourth Amendment Unlawful Search Claims**

The district court granted summary judgment to the Lakewood officers by applying the special-needs exception to the Fourth Amendment's warrant and probable cause requirements, whereby law enforcement officers can search a parolee's home without a warrant if they are "acting under the direction of the parole officer."  *United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007).  Under this rule, a parole officer "cannot act as a 'stalking horse' on behalf of police to assist police in evading the Fourth Amendment's warrant requirement."  *United States v. McCarty*, 82 F.3d 943, 947 (10th Cir. 1996).  !

6

The district court found that the Lakewood police officers acted under CPO Stegner's direction and concomitantly that Stegner was not acting as a stalking horse at the behest of the Lakewood officers. It relied, in part, on Stegner's testimony that he alone made the decision to search Cappelli and Todd's house on the day in question. It also relied on the Lakewood officers' testimony that they were brought in by Stegner as backup to assist with the search and Stegner's testimony that he instructed the Lakewood officers to search "for any violations or anything they were concerned about," Aplts. App., vol. 6 at 189.

Cappelli and Todd argue that the open-ended nature of Stegner's instruction to the Lakewood officers regarding the way they should conduct their search creates a factual issue about whether Stegner acted as a stalking horse for the Lakewood officers. We disagree. As the magistrate judge noted, this instruction reinforces testimony from Stegner and the Lakewood officers that Stegner initiated the search and that he brought the Lakewood officers in as backup to assist with the search. The instruction does not support a reasonable inference that Stegner acted as a stalking horse for the Lakewood officers to conduct an unlawful search.

Cappelli and Todd also argue the search by the Lakewood officers violated their Fourth Amendment rights because it was not supported by a reasonable suspicion that either of them had committed an offense. But as noted above, "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee," *Samson*, 547 U.S. at 857, if the search is "authorized by state law," *Matthews*, 928 F.3d at 976 (internal quotation marks omitted). And Colorado

7

law permits police officers to participate in searches authorized by CPOs. *See United States v. Warren*, 566 F.3d 1211, 1218 (10th Cir. 2009).

Cappelli and Todd finally argue the district court erred by granting summary judgment to the Lakewood officers because their temporary disconnection of cables connecting Todd's computing equipment to the internet caused unnecessary damage to property, rendering the search unreasonable under *United States v. Ramirez*, 523 U.S. 65, 71 (1998). But they did not make this argument in opposition to the Lakewood officers' summary judgment motion or in their objections to the magistrate judge's report and recommendation. We therefore do not consider it. *See Throupe v. Univ. of Denver*, 988 F.3d 1243, 1254 (10th Cir. 2021) ("We will not consider an argument that was not fully briefed and decided by the district court.").

We affirm the district court's grant of summary judgment to the Lakewood officers.

## B. Dismissal of Cappelli's Fourth Amendment Unlawful Arrest Claim

Cappelli claims that his arrest violated his Fourth Amendment rights because Stegner lacked probable cause to arrest him.

The district court agreed the complaint sufficiently alleged Stegner lacked probable cause to arrest Cappelli. But it found no law clearly establishing that the Fourth Amendment protects a parolee from arrest without probable cause. *Cf. Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008) ("Most courts that have considered the Fourth Amendment implications of seizing a parole violator have held that a parolee remains in legal custody during the period of his parole and therefore

8

that the retaking of a parole violator does not constitute an arrest for Fourth Amendment purposes."); Colo. Rev. Stat. § 17-22.5-203(2) ("Parole shall not be construed in any sense to operate as a discharge of any inmate . . . but simply a permit to [a paroled] inmate to go outside a correctional facility . . . ."). It therefore applied the doctrine of qualified immunity to dismiss the unlawful arrest claim. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal quotation marks omitted)).

Cappelli argues the district court erred by applying the doctrine of qualified immunity because the doctrine does not apply absent a "case [that] specifically addresses the . . . issue." Aplts. Opening Br. at 12. But Cappelli has the burden to "establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). And Cappelli does not cite any case, from any jurisdiction, holding that taking a parolee into custody constitutes an arrest for purposes of the Fourth Amendment. Nor does he cite any case, from any jurisdiction, holding that a parole officer must have probable cause or comply with state law in order to take a parolee into custody without running afoul of the Fourth Amendment. He has therefore not shown any error in the district court's qualified immunity ruling.

9

His remaining argument that Stegner violated Colorado state law by taking him into custody without probable cause is irrelevant to his § 1983 Fourth Amendment claim. *See Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) ("[C]laims based on violations of state law and police procedure are not actionable under § 1983.").

We affirm the district court's conclusion that the doctrine of qualified immunity bars Cappelli's Fourth Amendment unlawful arrest claim.

## C. Dismissal of Cappelli's Due Process Claim Related to the Booking Fee

Cappelli alleged the Jefferson County Sheriff's Office violated his Fourteenth Amendment due process rights by imposing an unreasonable procedural requirement to refund the $30 booking fee it collected from him at the time of his arrest. In particular, he asserted that the Sheriff's Office required him to submit a form requesting a refund. The form, in turn, asked Cappelli to submit documents showing he had been acquitted "to assist the Sheriffs Office [sic] in processing [Cappelli's] request." Aplts. App., vol. 2 at 62. Cappelli alleged he did not have a document evincing his acquittal and had to spend $439.50 in attorneys' and other fees to get one.

The district court evaluated the claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976). "Under *Mathews*, whether due process was satisfied requires analysis of the governmental and private interests that are affected." *United States v. Muhtorov*, 20 F.4th 558, 624 (10th Cir. 2021) (internal quotation marks omitted). In *Nelson v. Colorado*, 137 S. Ct. 1249, 1258 (2017), the Supreme Court applied *Mathews* and

held that "a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." The district court found that the "mechanism for obtaining a refund is straightforward and reasonable" and does not offend due process. Aplts. App., vol. 2 at 154.

Cappelli argues the refund procedure imposes a burden beyond what *Nelson* allows. We disagree. The requirement to produce an acquittal document[2] is ministerial in nature and in most cases requires nothing more than making a photocopy of a document the applicant already possesses. In Cappelli's case, he alleged his CPO did not provide any documentation evincing his acquittal, so he had to obtain relevant documents via a request under the Colorado Criminal Justice Records Act. And he alleged he had to pay a $5 fee to make the request. But taking these steps did not cause Cappelli to suffer a burden beyond what *Nelson* allows.

Cappelli's effort to bootstrap his due process claim by adding an allegation that he had to engage an attorney to make the records request falls flat. Under Colorado law, "records of official actions . . . shall be open for inspection by *any person* at reasonable times." Colo. Rev. Stat. § 24-72-303(1) (emphasis added).

---

[2] We assume for purposes of this Order and Judgment that the Sheriff's Office required Cappelli to produce his acquittal document to obtain a refund of the booking fee. But we note that Cappelli's complaint only alleges that the Sheriff's Office asked for this documentation "to *assist* the Sheriffs Office [sic] in processing [Cappelli's] request." Aplts. App., vol. 2 at 62 (emphasis added). The complaint does not allege Cappelli's request would have been denied if he had submitted it without the document.

11

Cappelli's voluntary choice to engage an attorney to make the request on his behalf cannot render the Sheriff's procedures unconstitutional.

Cappelli also argues the district court erred by considering evidence outside the complaint to support its dismissal. We need not decide this issue given our de novo conclusion that the complaint does not allege a viable due process claim.

We affirm the district court's dismissal of Cappelli's due process claim.

### III.  Conclusion

We affirm the district court's judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge

12