PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 7/15/96**

TENTH CIRCUIT

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

No. 95-2235

ROBERT W. SANCHEZ,

       Defendant - Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-94-475-JP)

Stephen P. McCue, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Louis E. Valencia, Assistant United States Attorney, Albuquerque, New Mexico (John J. Kelly, United States Attorney, Albuquerque, New Mexico, with him on the brief), for Plaintiff-Appellee.

Before KELLY, BRISCOE and LUCERO, Circuit Judges.

KELLY, Circuit Judge.

      Mr. Sanchez entered a conditional plea of guilty to possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and now appeals from the order of the district

court denying his motion to suppress. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## Background

On April 30, 1994, at approximately 9:30 P.M., Gary Powell, an Eastern New Mexico University police officer, noticed a vehicle enter a university parking lot and observed Defendant Sanchez and another individual exit the vehicle and begin walking towards some campus dorms. In conformity with the campus policy of requesting identification from persons walking on campus after dark, Officer Powell called to the men from the window of the patrol car, exited the car, and then called the men over to the car. Mr. Sanchez and his companion turned around and approached Officer Powell, who asked them if they were students. When they responded that they were not, Officer Powell requested identification, which neither could produce. Officer Powell then asked Mr. Sanchez if he had identification in his vehicle, and Mr. Sanchez responded "I could" or "I might," II R. 17, turned, and walked back to his vehicle. With Officer Powell behind him, Mr. Sanchez opened the passenger door of the vehicle, looked into the glove compartment, and started rummaging through the interior of the van. Officer Powell, who had become concerned for his own safety because he had not frisked Mr. Sanchez and was not wearing a bullet-proof vest, directed Mr. Sanchez to exit the vehicle and asked for permission to search the vehicle for weapons. II R. 21, 42-44. Mr. Sanchez left the vehicle, gave Officer Powell permission to search the vehicle and, at Officer Powell's

request, walked to the front of the vehicle. During his search of the vehicle, Officer Powell noticed two bundles wrapped in duct tape partially covered by a flannel shirt, all located on the front seat of the vehicle. The officer noticed a piece of plastic sticking out from one of the duct-taped bundles and it appeared to have a white powdery substance in it. Relying on his police training, Officer Powell believed that the appearance of the packages indicated that they contained cocaine. Officer Powell removed the bundles from the van and peeled back some of the tape. When Officer Powell asked Mr. Sanchez what the bundles contained, Mr. Sanchez ran away but eventually was apprehended. The bundles contained about 500 grams of cocaine.

Discussion

In reviewing the district court's denial of a motion to suppress, we apply the clearly erroneous standard of review to the district court's findings of fact and view the evidence in the light most favorable to the government. United States v. Lewis, 71 F.3d 358, 360 (10th Cir.1995). The reasonableness of a search and seizure is a question of law we review de novo. United States v. Martinez-Cigorroa, 44 F.3d 908, 910 (10th Cir.), cert. denied, 115 S. Ct. 1386 (1995).

Mr. Sanchez claims that (1) he was seized without reasonable suspicion when Officer Powell summoned him over to the police vehicle and asked him for identification; and (2) Officer Powell's seizure of the duct-taped bundles from the front seat of Mr. Sanchez's vehicle exceeded the permissible scope of the protective search.

## I. The Seizure

The Fourth Amendment protects citizens from unreasonable searches and seizures by government actors. Burdeau v. McDowell, 256 U.S. 465, 475 (1921). Not all interaction between a police officer and a citizen involves a seizure, however. Florida v. Bostick, 501 U.S. 429, 434 (1991). A seizure occurs only when a police officer, "by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968). The proper inquiry is an objective one: "[a]s long as a reasonable innocent person, as opposed to a person knowingly carrying contraband, would feel free to leave, such encounters are consensual and need not be supported by reasonable suspicion of criminal activity." United States v. Laboy, 979 F.2d 795, 798 (10th Cir. 1992). The subjective intentions or state of mind of either the defendant or police is irrelevant to Fourth Amendment analysis. Whren v. United States, No. 95-5841, 1996 WL 305735, at *5 (U.S. June 10, 1996); United States v. Madrid, 30 F.3d 1269, 1276 (10th Cir.), cert. denied, 115 S. Ct. 527 (1994).

A seizure does not occur simply because a police officer approaches an individual, asks questions, or requests identification. Bostick, 501 U.S. at 434. Without any basis for suspecting the criminal involvement of a particular individual, police may communicate and ask questions of that individual. Id. at 434-35. Courts have identified several factors that could lead a reasonable innocent person to believe that he is not free to disregard the police officer, including: the threatening presence of several officers; the

brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed space; and absence of other members of the public. Laboy, 979 F.2d at 798-99.

None of these factors are present here. The encounter occurred in an open and well illuminated parking lot. II R. 9. When he pulled his patrol car up to Mr. Sanchez's vehicle, Officer Powell did not obstruct or block Mr. Sanchez's vehicle or prevent Mr. Sanchez from leaving the parking lot had he chosen to do so. II R. 11, 62. Officer Powell's request "if they would come over . . . so I wouldn't have to yell across the parking lot," II R. 14, is not inherently coercive. See Laboy, 979 F.2d at 799. Although accompanied by a security aide, only Officer Powell exited the patrol vehicle to initiate contact and interact with Mr. Sanchez and his companion. II R. 17, 55. Officer Powell did not overtly display his weapon, II R. 18, 22, 58; use aggressive language or tone when communicating with Mr. Sanchez, II R. 15, 62; physically make contact with either of the men; or obtain or retain any of Mr. Sanchez's personal effects until after seizing the contraband. By the time Mr. Sanchez fled and Officer Powell gave chase, about 25-30 students had come out of a nearby dormitory to witness the encounter. II R. 28. Officer Powell's failure to inform Mr. Sanchez that interaction with him was voluntary does not

violate the Fourth Amendment. See United States v. Little, 18 F.3d 1499, 1505 (10th Cir. 1994). On these facts, a reasonable innocent person would have felt free to terminate the encounter and leave the scene, Laboy, 979 F.2d at 799; Bostick, 501 U.S. at 437; the encounter was consensual and required no reasonable suspicion to justify it.

Finally, Defendant's substantial reliance on Brown v. Texas, 443 U.S. 47 (1979) is misplaced. In Brown, the Supreme Court found a seizure where the police stopped the defendant and demanded identification; the defendant refused to identify himself and asserted that the police had no right to detain him; the police frisked the defendant; and when the defendant continuously refused to identify himself, the police arrested him. Brown turned on the involuntary detention of the defendant. Id. at 50. Unlike the situation in Brown, this case did not involve any animosity between the police and Mr. Sanchez. Officer Powell did not use aggressive language or a threatening tone of voice or even intially conduct a frisk.

## II. The Search

### A. Consent to Search

When the government relies on a defendant's consent for the validity of a search, the government bears the burden of proving that defendant's consent was freely and voluntarily given, a determination we make by evaluating the totality of the circumstances. United States v. McRae, 81 F.3d 1528, 1536-37 (10th Cir. 1996). We have developed a two-step test for determining the voluntariness of a consent to search:

the government must (1) "proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given" and (2) "prove that this consent was given without implied or express duress or coercion." McRae, 81 F.2d at 1537 (quoting United States v. Angulo-Fernandez, 53 F.3d 1177, 1180 (10th Cir.1995)). The district court correctly found that Mr. Sanchez gave consent. The totality of the circumstances indicates that Mr. Sanchez voluntarily consented to Officer Powell's search the interior of his vehicle for weapons.

## 2. The Scope of the Search

Mr. Sanchez argues that Officer Powell's search, during which he discovered and removed two bundles from the vehicle and peeled back some tape on one of the bundles, exceeded the scope of his consent. "[T]he scope of a consent to search is limited by the breadth of the consent given." McRae, 81 F.3d at 1537 (quoting United States v. Pena, 920 F.2d 1509, 1514 (10th Cir.1990), cert. denied, 501 U.S. 1207 (1991)). "A suspect may of course delimit as he chooses the scope of the search to which he consents." Florida v. Jimeno, 500 U.S. 248, 252 (1991). To evaluate the scope of a defendant's consent, we employ an "objectively reasonable" standard and ask: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" United States v. Wacker, 72 F.3d 1453, 1470 (10th Cir.1995) (quoting Jimeno, 500 U.S. at 251). We determine from the totality of the circumstances whether a search remains within the boundaries of the consent given and view the evidence in the light

most favorable to the government.  McRae, 81 F.3d at 1537.

After receiving consent to search, Officer Powell initially looked in the glove compartment and then immediately "to the seat of the car . . . [where] he observed two bundles on the seat partially covered by a flannel shirt."  II R. 57.  The officer noticed a piece of plastic sticking out from one of the duct-taped bundles and it appeared to have a white powdery substance in it.  Although he did not suspect weapons, II R. 71-72, based on his training and experience, Officer Powell immediately believed that they contained narcotics, II R. 25, 70.  Officer Powell proceeded to pick up and more closely inspect one of the bundles and "could clearly see there was a great deal of white powdery substance in it."  II R. 25.  At no time did Mr. Sanchez or his companion object to the search, a fact that we have indicated "may be considered an indication that the search was within the scope of consent."  McRae, 81 F.3d at 1538 (quoting Pena, 920 F.2d at 1515).

Under the plain view doctrine, a police officer may properly seize evidence of crime without a warrant if "(1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent--i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself."  United States v. Soussi, 29 F.3d 565, 570 (10th Cir. 1994) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)).  The seizure of the bundles from Mr. Sanchez's vehicle fits squarely within the plain view doctrine.  Officer Powell was lawfully inside Mr.

Sanchez's vehicle to search for weapons, and the object seized was in plain view on the front seat. It is immaterial that Mr. Sanchez gave consent only to search for weapons; an officer who is legally present and searching for one item need not deliberately disregard other items but rather may lawfully seize such items "so long as the government's plain view seizure scrupulously adheres to the three-prong Horton test." Soussi, 29 F.3d at 572.

Finally, Defendant's reliance on Minnesota v. Dickerson, 508 U.S. 366 (1993) is inapposite. In Dickerson, the Supreme Court held that the plain view doctrine did not justify the confiscation of contraband from the pocket of a suspect, seized and searched pursuant to Terry v. Ohio, 392 U.S. 1 (1968), where the incriminating character of the contraband was not immediately apparent to the officer. Dickerson, 508 U.S. at 378-79 (discussing Arizona v. Hicks, 480 U.S. 321 (1987)). In this case, because Mr. Sanchez was not seized and the object's incriminating character was immediately apparent to Officer Powell, II R. 57, the seizure of the bundles of cocaine was permissible. See id.; United States v. McCarty, 82 F.3d 943, 948-49 (10th Cir. 1996).

AFFIRMED.