**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 3 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE GUTIERREZ-MORAN,

    Defendant-Appellant.

No. 96-2257
(D.C. No. CR-95-625-HB)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR,** Chief Judge**, PORFILIO** and **BRORBY**, Circuit Judges.

On appeal, defendant Jose Gutierrez-Moran argues that: (1) the district court erred in refusing to suppress certain evidence discovered in his home; and (2) the government presented insufficient evidence to support his conviction. We affirm.

Jose Gutierrez-Moran and his brother, Eugenio, were routinely stopped at a border checkpoint in New Mexico when a border patrol agent smelled marijuana emanating from the back of the van Mr. Gutierrez-Moran was driving. Border patrol agents subsequently searched the van, discovering 293 pounds of marijuana hidden in its internal walls. After

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Gutierrez-Moran was arrested, San Jose, California Police Officer Ernesto Vallecilla and United States Custom Agent Matthew Van Dyke went to his home in San Jose. There they met Mr. Gutierrez-Moran's adult son, Jose, Jr., who indicated that he also lived at that address. Officer Vallecilla asked if they could search the home and Jose, Jr. consented.

During the search of Mr. Gutierrez-Moran's home, Agent Van Dyke noticed an answering machine in the master bedroom and played the tape inside it. At that time, Jose, Jr. was in the basement with Officer Vallecilla. Listening to the tape, Agent Van Dyke heard a conversation between someone later identified as defendant Gutierrez-Moran and Jose, Jr.'s girlfriend, Alicia Moreno, in which Mr. Gutierrez-Moran asked Ms. Moreno to "make sure the house is clean" because "they might go over and visit." Later in the conversation, Mr. Gutierrez-Moran again told Ms. Moreno to "make sure you clean the house real good" because "they could come and talk to you guys." Agent Van Dyke then played the tape two more times, once for Officer Vallecilla and once for Jose, Jr., and seized it as evidence.

Ultimately, the government charged Mr. Gutierrez-Moran with possession with intent to distribute over 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B), and 18 U.S.C. § 2. Mr. Gutierrez-Moran moved to suppress the tape, but the district court denied his motion. A jury later found Mr. Gutierrez-Moran guilty.

At the time the district court denied Mr. Gutierrez-Moran's motion to suppress, it made no explicit findings of fact. However, during discussion of the motion to suppress, the court noted that Agent Van Dyke's report of the search put the government "on a little more solid ground" in arguing that Officer Vallecilla requested permission to search for contraband *and* evidence, rather than contraband alone. The court also asked Officer Vallecilla what he told Jose, Jr. when requesting permission to search Mr. Gutierrez-Moran's home. Officer Vallecilla replied that he told Jose, Jr. "[w]e were looking for evidence with regards to the transportation of narcotics from San Jose from the suspect."

On appeal, Mr. Gutierrez-Moran first argues that Agent Van Dyke's seizure of the answering machine tape violated his Fourth Amendment rights because Jose, Jr. only consented to a search for contraband. Next, he argues that even if Jose, Jr. consented to a search for evidence as well, the tape was beyond the scope of consent because it was not obvious evidence of narcotics trafficking in plain view and because Jose, Jr. understood the term "evidence" to mean evidence of contraband only. In addition, Mr. Gutierrez-Moran contends that any request to search for evidence should be rejected by this court as an unconstitutional request for a general search. Finally, he argues that the district court's error in this case was prejudicial because the government used the tape to prove his knowledge of the marijuana hidden inside the van.

We review an order granting or denying a motion to suppress *de novo*, accepting the district court's findings of fact unless clearly erroneous and considering the evidence

- 3 -

in a light most favorable to the government. *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997). Whether a search remained within the boundaries of the consent given is a question of fact to be determined from a totality of the circumstances. *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990); *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986).

The standard for measuring the scope of an individual's consent to search is that of "objective reasonableness," asking what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). As a result, the scope of a consent to search "is generally defined by its expressed object," *id.*, and "is limited by the breadth of the consent given." *Pena*, 920 F.2d at 1514. In this case, the district court implicitly found that the answering machine tape was within the scope of consent to search provided by Jose, Jr.; otherwise, it would have granted Mr. Gutierrez-Moran's motion to suppress.

We have previously afforded deference to a district court's implicit findings of fact supporting the denial of a motion to suppress. *See United States v. Toro-Pelaez*, 107 F.3d 819, 824-25 (10th Cir. 1997) (reviewing district court's implicit resolution of credibility issues in favor of government under clearly erroneous standard). We believe we should do so here. As the government correctly notes, a number of factors support the district court's implicit finding that Jose, Jr. consented to a search of the home for both contraband and evidence.

Although Officer Vallecilla initially testified that he requested to search the house for contraband and the tape was not what he was searching for at the time, he later clarified that the request to search extended to evidence as well. When the district court questioned him about the inconsistency in his testimony, Officer Vallecilla reiterated that he told Jose, Jr. they were looking for evidence relating to his father's drug trafficking. This statement was corroborated by two other circumstances. First, Agent Van Dyke's report memorializing the search stated that "Officer Vallecilla asked if the agents could search the residence for additional narcotics *and evidence*." (emphasis added). Second, it is uncontroverted that Jose, Jr. did not object or try to limit the government's search when he saw Officer Vallecilla and Agent Van Dyke looking through documents in Mr. Gutierrez-Moran's hallway and master bedroom--a fact this court has previously considered to be relevant in determining the scope of an individual's consent to search.[1] *See, e.g., **United States v. Sanchez***, 89 F.3d 715 (10th Cir. 1996) (fact defendant did not object to component of search indicated it was within scope of consent); ***United States v. McRae***, 81 F.3d 1528, 1538 (10th Cir. 1996). As a result, the district court's implicit finding that the tape was within the scope of consent to search provided by Jose, Jr. is

_____

[1]Mr. Gutierrez-Moran's claim that Jose, Jr. had no opportunity to object or limit the search because he was in the basement when Agent Van Dyke first played the tape is unavailing in light of the fact that Jose, Jr. *was* present when Agent Van Dyke and Officer Vallecilla looked through personal papers in the house. He did not object to that portion of the search either, indicating he did not understand the search to be limited to contraband alone, regardless of his whereabouts at the time the tape was initially played.

amply supported by the record, despite the existence of countervailing evidence. We therefore conclude the factual findings underlying the court's denial of Mr. Gutierrez-Moran's suppression motion are not clearly erroneous. *See **Anderson v. City of Bessemer City***, 470 U.S. 564, 573-74 (1985) ("Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."). Because we hold the search was consensual, we reject Mr. Gutierrez-Moran's remaining challenges to the district court's denial of his motion to suppress.

Mr. Gutierrez-Moran argues that the government failed to present sufficient evidence to prove beyond a reasonable doubt he knowingly possessed the marijuana in his van. According to Mr. Gutierrez-Moran, the government's circumstantial evidence of knowledge is insufficient to sustain his conviction because another individual used his van to cross the border without his permission, the border patrol agent admitted he could not smell marijuana from the front of the van, and his actions at the border checkpoint were consistent with innocence.

We review a district court's determination that sufficient evidence exists to support a conviction *de novo*. ***United States v. McDermott***, 64 F.3d 1448, 1457 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 930 (1996). Evidence is sufficient to support a conviction if, considering both direct and circumstantial evidence in a light most favorable to the government, a reasonable jury could find the defendant guilty of the crime charged beyond a reasonable doubt. ***United States v. Clark***, 57 F.3d 973, 976 (10th Cir. 1995).

To support a guilty verdict, the evidence presented "need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir. 1991), *abrogated on other grounds by United States v. Wacker*, 72 F.3d 1453 (10th Cir.), *cert. denied*, 117 S. Ct. 136 (1996); *accord Clark*, 57 F.3d at 976; *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir. 1986). Moreover, a criminal conviction may be sustained on circumstantial evidence alone. *Hooks*, 780 F.2d at 1529.

Having upheld the admissibility of the contents of the tape, we believe defendant's argument is without merit because the tape and defendant's ownership and possession of the van provide ample basis for a jury to find knowing possession of marijuana beyond a reasonable doubt. Even without the tape, the fact Mr. Gutierrez-Moran had nearly 300 pounds of marijuana in his possession--a quantity sufficient to cause emanation of a strong, distinctive smell from the back of his van, undermines his argument. Although Mr. Gutierrez-Moran claims he couldn't smell the marijuana from the driver's seat and someone else used his van to cross the border without his permission, the very circumstances of this case could warrant a jury to find those claims incredible and conclude instead Mr. Gutierrez-Moran was knowingly trafficking drugs. **AFFIRM**.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge