**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 26 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

NATHAN A. CLASEN,

     Defendant - Appellant.

No. 97-4149
(D.C. No. 96-CR-37-C)
(District of Utah)

**ORDER  AND  JUDGMENT** [*]

Before **LUCERO** , **McKAY** and **MURPHY** , Circuit Judges.

Having conditionally pled guilty to possession of a fully automatic machine gun in violation of 18 U.S.C. § 922(o), Nathan Clasen appeals the district court's denial of his motion to suppress the firearm, contending that it was obtained from his car after an illegal search.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*]  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I

The following is based on testimony elicited at the suppression hearing. On October 25, 1995, off-duty deputy Roger Young of the Millard County Sheriff's office received information that a male named "Nathan" had been seen firing an automatic weapon in the gravel pits north of Delta, Utah. While on duty the following day, Deputy Young spoke with the witness, who gave him the license plate number of the blue Jeep Cherokee that Nathan had been driving. The vehicle was registered to Lisa Williams of Delta.

Young went to Williams' home to inquire about the identity of the driver. Williams produced a sales contract demonstrating that she sold the vehicle about six weeks earlier to Nathan Clasen and his grandfather. While standing on Williams' porch, Young and Williams saw the blue jeep drive by. Young followed the jeep into the parking lot of an apartment complex a block away, where he approached it. According to Young, he "stopped the vehicle to inquire regarding the improper registration of the vehicle, why the plates had not been transferred over to that individual, where they had already bought the vehicle." Hearing Tr. at 6. Young testified that the registration offense was the primary reason for the stop and that the weapon offense was a secondary reason.

Young asked the driver, Tiffany Edwards, whether she was the owner of the jeep. She indicated that her boyfriend Nathan Clasen, who was at her nearby

apartment, owned the jeep. Young did not ask Edwards for her driver's license nor did he cite her for driving an improperly registered vehicle, but requested that she ask Clasen to come outside to speak with him. When Clasen emerged, Young informed him that the vehicle was not properly registered. Clasen responded that he and his grandfather had not yet had time to get the vehicle registered and had not received the transfer of title.

After raising the improper registration issue, Young questioned Clasen regarding whether he had fired an automatic weapon in the gravel pits two days prior. Clasen responded that he had been to the gravel pits with a .22 caliber rifle and a shotgun, but not an automatic rifle. He also stated that he did not have an AK-47 in the vehicle. Clasen refused Young's request for permission to search the vehicle. Young then advised Clasen that "the vehicle would be subject to state impound due to the improper registration and that during the impounding of it we would do an inventory of the vehicle. In such case if the weapon was in the vehicle, it would be located." Id. at 10. Young returned to his patrol car to call the city attorney in order to clarify vehicle registration requirements, and Clasen returned to the apartment.

After some reflection, Clasen changed his mind about the search, deciding that he could not afford to lose either his jeep or the other property inside it. He came back outside and informed Sergeant Stewart, who had joined Young, that

-3-

the weapon was in the vehicle. Clasen opened the vehicle and pointed out a black nylon gun case in the rear of the car as well as ammunition and clips. Young took custody of the weapon and then asked Clasen to accompany him to the sheriff's office to answer questions regarding its origin.

At the sheriff's office, Young notified Clasen that he was not under arrest but that for his protection he would be advised of his <u>Miranda</u> rights. Clasen read his rights and signed a waiver form. He then made a statement indicating that he had received the weapon from a friend, had fired the weapon, knew that it was automatic, and knew that it was illegal to possess such a weapon.

## II

Clasen contends on appeal that the district court improperly denied his motion to suppress the weapon. He asserts that he did not voluntarily consent to the search of the jeep and therefore the weapon was retrieved as the result of an illegal, warrantless search.

In reviewing a district court's denial of a motion to suppress, we apply the clearly erroneous standard of review to the district court's findings of fact and view the evidence in the light most favorable to the government.[1] <u>See</u> <u>United</u>

---

[1]   The district court adopted the Magistrate's Report and Recommendation in its entirety, and we will therefore refer to the magistrate's findings as those of the district court.

States v. Sanchez , 89 F.3d 715, 717 (10th Cir. 1996). The overall reasonableness of a search is a question of law that we review de novo. Id.

An officer may conduct a warrantless search consistent with the Fourth Amendment if the defendant voluntarily consents to the search. See Schneckloth v. Bustamonte , 412 U.S. 218, 219 (1973). The voluntariness of consent is a question of fact to be determined from the totality of the circumstances. See id. at 248-49 ; United States v. Hernandez , 93 F.3d 1493, 1500 (10th Cir. 1996). This inquiry requires consideration of, among other things, any "physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant." United States v. McCurdy , 40 F.3d 1111, 1119 (10th Cir. 1994). [2] When the government relies on a defendant's consent to validate a search, the government bears the burden of proving that the defendant's consent was freely and voluntarily given. See United States v. McRae , 81 F.3d 1528, 1536 (10th Cir. 1996). In order to establish the validity of consent, the government must (1) "proffer clear and positive testimony that consent was unequivocal and specific and freely and

---

[2] Because appellant was not under arrest at the time of the search, and the evidence demonstrates he was free to leave at his will, these facts do not require that the consent satisfy the higher standard of voluntariness necessary to validate a consent to search given after an unlawful detention. See Hernandez , 93 F.3d at 1500.

-5-

intelligently given" and (2) "prove that this consent was given without implied or express duress or coercion."    Sanchez , 89 F.3d at 719.

Appellant argues that his consent to search was involuntary because it was in response to Deputy Young's assertion of legal authority to impound and inventory search Clasen's vehicle.    See Appellant's Br. at 15.  According to Clasen, an impound and search would have been unreasonable under the circumstances, and because Clasen's consent was prompted by an erroneous statement of law, it was involuntary.

Upon careful review of the record, we uphold the district court's conclusion that Clasen voluntarily consented to the search.  Contrary to the appellant's assertion, this case is not analogous to a situation where an officer has inaccurately asserted lawful authority to search and thereby coerced consent.    See, e.g. , Bumper v. North Carolina  , 391 U.S. 543, 548-49 (1968) (holding consent involuntary because officers obtained it after erroneously representing that they had a valid warrant).

In order to determine the soundness of Young's assertion that the vehicle would be subject to impoundment and inventory, we examine whether such actions would be authorized under Utah law.    See United States v. Rios  , 88 F.3d 867, 870 (10th Cir. 1996).  We conclude that on the facts before us, Young spoke accurately

when he indicated that he had authority to impound and inventory search the vehicle.

Under Utah law, "any peace officer, without a warrant, may seize and take possession of any vehicle . . . that is being operated on a highway: . . . (ii) having never been properly registered by the current owner. . . ." U.C.A. § 41-1a-1101(f)(ii) (1997 Supp.). It is undisputed that Clasen's vehicle was operated on a highway even though it was improperly registered. We agree with the district court that it is immaterial that the vehicle came to a stop in a private parking lot immediately before the officer broached the possibility of impoundment. This is not a situation where an officer has ventured onto private property searching for improperly registered vehicles that have not been driven on public roads. Here, the officer had witnessed what he reasonably suspected to be an improperly registered vehicle being driven on a public road, and the officer followed it a block into a private parking lot. The fact that the officer did not confront the driver until the car was parked in the lot does not render the impoundment statute inapplicable. The district court did not err when it concluded that under these circumstances Deputy Young correctly stated that the vehicle was subject to impoundment.

Deputy Young also correctly stated that, upon impoundment, an inventory search would be conducted. A warrantless inventory search of a vehicle pursuant to lawful impoundment generally will not violate the Fourth Amendment. <u>See</u>

South Dakota v. Opperman, 428 U.S. 364, 369-71 (1976). It is a common practice for police authorities to inventory search the property in an impounded vehicle in order to protect the police from danger and prevent allegations of police theft. See id. at 369. Such procedures are consistent with Utah law. See State v. Strickling, 844 P.2d 979, 987 (Utah Ct. App. 1993) (noting that inventory search is justified if conducted pursuant to lawful impoundment and consistent with regularized procedures); see also Opperman, 428 U.S. at 372 (noting that inventories conducted pursuant to standard police procedures are reasonable). That Deputy Young may have had additional investigative interest in the contents of the vehicle does not in itself render a permissible inventory search improper. We agree with the district court that appellant's contention that an inventory of the vehicle would have been mere pretext for an investigative search is unduly speculative.

Because we agree with the district court that the officer did have legitimate authority under Utah law to impound the car and had lawful authority to conduct an inventory search pursuant to the impoundment, Deputy Young's statement to Clasen that the vehicle was subject to impoundment and inventory was not deceitful or impermissibly coercive.

Examining the totality of the circumstances, we also agree with the district court's conclusion that the appellant freely and voluntarily consented to the search. Deputy Young correctly stated that he had authority to impound and inventory

-8-

search the vehicle. Clasen was not under arrest or otherwise detained at the time he gave the consent. He was aware of his right to refuse to the officer's request to search and, in fact, initially exercised this right. The vehicle was at no time impounded. Clasen returned to his residence to consider the matter after he was informed that the vehicle could be impounded. He then voluntarily left his residence to resume conversation with the two officers. Of his own volition, Clasen obtained the keys to the vehicle, opened it, and gave the weapon to Officer Stewart and produced ammunition clips that had not been requested. See Magistrate's Report & Recommendation at 20. There is no evidence that the officers' questioning was in any way "accusatory, persistent, and intrusive," rendering an otherwise voluntary encounter coercive. See Hernandez , 93 F.3d at 1499. The district court correctly concluded that Clasen consented to the search of his jeep, and, in light of his valid consent, the search was not constitutionally infirm. [3]

_____

[3] Because we conclude that Clasen voluntarily consented to the search, we need not address whether the officer had probable cause to search the vehicle under the doctrine of United States v. Carroll , 267 U.S. 132 (1925).

**III**

For the reasons set forth above, the district court's denial of the motion to suppress is AFFIRMED.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge