**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JAIME RAMIREZ,

     Defendant - Appellant.

No. 97-2347
(D.C. No. CR-97-158-JP)
(District of New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **BRISCOE** and **LUCERO**, Circuit Judges.

---

     Jaime Ramirez appeals the district court's denial of his motion to suppress evidence and statements obtained during an allegedly unconstitutional search and seizure at a fixed border checkpoint. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I

Ramirez was a passenger on a bus that stopped at a fixed border checkpoint north of Las Cruces, New Mexico. At the checkpoint, United States Border Patrol Agent Henry Davila boarded the bus and examined the passengers' citizenship documents. After examining Ramirez's New Mexico driver's license and moving on, Davila returned to question Ramirez a second time because, he claims, Ramirez appeared nervous, and his hand trembled. During the second encounter, Ramirez volunteered that he had gone to El Paso to drop off his mother at the airport and was traveling to Albuquerque with toys for his children. Based on the volunteered information and Ramirez's nervousness, Davila asked Ramirez to step off the bus and into a nearby checkpoint trailer for further questioning.

Once inside the trailer, Davila ran an NCIC check to determine whether Ramirez was a fugitive. In response to Davila's questions, Ramirez conceded that he previously had been arrested for robbery and battery and that Davila made him nervous. Davila, who later testified that he feared for his safety, then asked for consent to conduct a pat-down search. Ramirez consented, and the search revealed bags of cocaine taped to Ramirez's legs. More cocaine was discovered during a search incident to Ramirez's arrest. Ramirez unsuccessfully moved to suppress the cocaine and related statements, arguing that they were the fruit of an illegal detention. He entered a conditional plea of guilty to charges of possession

with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2, reserving the right to appeal the denial of his motion to suppress.

## II

"On appeal from the denial of a motion to suppress, we review the evidence in the light most favorable to the government and we review the district court's factual findings only for clear error." United States v. Lambert, 46 F.3d 1064, 1067 (10th Cir. 1995). If the district court makes no findings in resolving a motion to suppress, the appellate court "must uphold the ruling 'if there is any reasonable view of the evidence to support it.'" United States v. Donnes, 947 F.2d 1430, 1432 (10th Cir. 1991) (quoting United States v. Morgan, 936 F.2d 1561, 1565 (10th Cir. 1991) (citation omitted)). The ultimate reasonableness, however, "of a search and seizure is a question of law we review de novo." United States v. Sanchez, 89 F.3d 715, 717 (10th Cir. 1996).

## III

We first consider whether Davila harbored sufficient suspicion to question Ramirez for a second time on the bus. Second, we determine whether Ramirez suffered a Fourth Amendment violation when Davila removed him from the bus for questioning in the checkpoint trailer. Third, we decide whether Ramirez was subjected to an unconstitutional pat-down search in the checkpoint trailer.

-3-

Fourth, we consider the admissibility of Ramirez's statements. Finally, we determine whether cocaine found in Ramirez's boots was discovered in violation of his Fourth Amendment rights.

**A**

Fourth Amendment jurisprudence allows a border patrol agent to board a bus at a fixed border checkpoint and briefly question passengers regarding citizenship, immigration status, and any suspicious circumstances. See United States v. Hernandez, 7 F.3d 944, 946 (10th Cir. 1993). Such questioning is permitted in the absence of any individualized suspicion to prevent the influx of unauthorized aliens and contraband into the United States, see United States v. Sanders, 937 F.2d 1495, 1500 (10th Cir. 1991), and because such stops pose only a minimal intrusion into an individual's privacy. See United States v. Martinez-Fuerte, 428 U.S. 543, 561-64 (1976); United States v. Ludlow, 992 F.2d 260, 262-63 (10th Cir. 1993). Given the deference afforded a border patrol agent's determination of suspicious circumstances, see Hernandez, 7 F.3d at 946, and the brief and unobtrusive nature of Davila's questions, Davila possessed sufficient justification to return to question Ramirez while still on the bus.

**B**

We conclude that Ramirez did not suffer a Fourth Amendment violation when Davila removed him from the bus for questioning in the checkpoint trailer

-4-

because Ramirez consented to this questioning. "Voluntary encounters [between citizens and law enforcement officers] are not considered seizures within the meaning of the Fourth Amendment and do not raise any constitutional issues." United States v. Laboy, 979 F.2d 795, 798 (10th Cir. 1992) (citations omitted). "As long as a reasonable innocent person, as opposed to a person knowingly carrying contraband, would feel free to leave, [an encounter with law enforcement officers is] consensual and need not be supported by reasonable suspicion of criminal activity." Sanchez, 89 F.3d at 717-18 (quoting Laboy, 979 F.2d at 798)).

The district court found that "Mr. Ramirez agreed [to leave the bus] and followed Agent Davila off the bus and into the checkpoint trailer." I R. Doc. 19 at 2. The court also found that "[a]t no time was Mr. Ramirez threatened or coerced." Id. We conclude that the record supports the district court's findings. At the evidentiary hearing on Ramirez's motion to suppress, Agent Davila testified that, using a normal tone of voice, he asked Ramirez to leave the bus. Davila further testified that Ramirez agreed and followed him off the bus. The record indicates that the single agent did not brandish his weapon, use aggressive language, or physically touch Ramirez when he asked Ramirez to disembark. See Sanchez, 89 F.3d at 718 (enumerating factors relevant to whether a reasonable person would feel free to leave). Nor did Davila block Ramirez's egress. Ramirez himself acknowledged that while he was on the bus Davila did not

threaten him, and he knew he was not under arrest. Viewing the evidence in the light most favorable to the government, see Lambert, 46 F.3d at 1067, we conclude that a reasonable person who was not carrying contraband could have believed that he was free to decline Davila's request to disembark and submit to further questioning. Even if we construe the district court's order as failing to make a finding as to the voluntariness of Ramirez's consent to disembark for further questioning, the record can reasonably be interpreted to support such a conclusion. See United States v. Gonzalez-Acosta, 989 F.2d 384, 387 (10th Cir. 1993).[1] Accordingly, Ramirez's removal from the bus and questioning in the checkpoint trailer was consensual and did not implicate his Fourth Amendment rights. See Laboy, 979 F.2d at 798.[2]

---

[1]The lack of thorough findings on the issue of Ramirez's consent to disembark for further questioning, though not grounds for reversal, is troubling. In the absence of consent, Davila would have needed a reasonable suspicion of criminal activity to support this investigative detention. We reject the suggestion that absent consent, "suspicious circumstances" would suffice to justify Ramirez's removal from the bus. While a motorist may be referred to a secondary checkpoint based on suspicious circumstances, or even in the absence of suspicious circumstances, see Sanders, 937 F.2d at 1499-1500, the degree of intrusion that such a referral entails is much less than that experienced by a bus passenger who is removed from a bus to a separate building for interrogation.

[2] Given our conclusion that Ramirez consented to the questioning, we decline to rule on whether the checkpoint interrogation constituted an "investigative detention" supported by the necessary reasonable suspicion of criminal activity, whether Davila exceeded the scope of his authority by implementing an investigative detention based on a suspicion that Ramirez might be a fugitive, and whether the detention ceased to be constitutional after Davila determined that Ramirez was not a fugitive.

## C

The district court did not err when it found that Ramirez consented to a pat-down search in the checkpoint trailer. Consent to search is valid if given voluntarily. See Schneckcloth v. Bustamente, 412 U.S. 218, 222 (1973). The voluntariness of consent is a question of fact to be determined from the totality of all the circumstances. See id. at 227. The district court explicitly found that Ramirez knowingly and voluntarily consented to this search. The court found that "Agent Davila asked Mr. Ramirez if he could pat him down for a weapon. Mr. Ramirez consented to a pat down search." I R. Doc. 19 at 2. The court further found that "[a]t no time was Mr. Ramirez threatened or coerced." I R. Doc. 19 at 3. The record supports these findings. Davila testified that he requested and received permission from Ramirez to conduct a pat-down search. Davila testified that he at no time threatened Ramirez and that he did not restrict Ramirez's movement in any way prior to the time that he handcuffed Ramirez. Ramirez himself testified that neither of the two officers in the checkpoint brandished their weapons, and he did not believe himself to be under arrest when Davila sought consent for the pat-down search. Viewing the evidence in the light most favorable to the government, see Lambert, 46 F.3d at 1067, we affirm the finding that Ramirez voluntarily consented to the pat-down search.

We also affirm the district court's conclusion that because the search itself

was lawful, Davila properly seized the cocaine packets taped to Ramirez's legs under the "plain feel" doctrine. See Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993) ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.").

**D**

The district court correctly refused to suppress Ramirez's statements. In reviewing a decision on a motion to suppress a statement, we accept the district court's factual findings unless they are clearly erroneous and review de novo the ultimate question of whether a statement was voluntary. See United States v. Hernandez, 93 F.3d 1493, 1501 (10th Cir. 1996). While Ramirez fails clearly to identify the statements that he seeks to suppress, we find that any statements that he made prior to the pat-down search were voluntary. "Volunteered statements of any kind are not barred by the Fifth Amendment." Miranda v. Arizona, 384 U.S. 436, 478 (1966). "If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993).

Ramirez's statements following the pat-down search, specifically his identification of the contents of the cocaine bundles and his statement that someone must have tipped off the police, were admissible based on Ramirez's waiver of his <u>Miranda</u> rights. Upon discovery of the packets on Ramirez's legs, Davila read Ramirez his <u>Miranda</u> warnings, Ramirez indicated that he understood the warnings, and then he agreed to speak with Davila. <u>See</u> <u>United States v. Gell-Iren</u>, 146 F.3d 827, 830 (10th Cir. 1998) (defendant who was given <u>Miranda</u> warnings, stated that he understood them, and then gave information to officers demonstrated voluntary waiver of <u>Miranda</u> rights). The record supports a finding that Ramirez's statements were not coerced. In light of these circumstances, we find that Ramirez knowingly and voluntarily waived his rights, and his statements are admissible.

**E**

Finally, we affirm the district court's determination that the cocaine found in Ramirez's boots is admissible. <u>See</u> <u>Chimel v. California</u>, 395 U.S. 752, 762-63 (1969). The record supports the conclusion that this cocaine was obtained during a lawful search incident to arrest.

We **AFFIRM**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge