**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 23, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

LETICIA A. RODRIGUEZ, a/k/a
Rebecca Garcia-Beltran,

  Defendant-Appellant.

No. 05-7082

(E.D. Oklahoma)

(05-CR-00005-W)

---

**ORDER & JUDGMENT**[*]

---

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

---

  After examining the briefs and the appellate record, this three-judge panel

has determined unanimously to grant the Appellant's unopposed motion to submit

this appeal on the briefs. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The

case is therefore ordered submitted without oral argument.

  Defendant-appellant Leticia A. Rodriguez was indicted on one count of

possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1)

---

  [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
may be cited under the terms and conditions of 10th Cir. R. 36.3.

and (b)(1)(A)(ii). After the district court denied her motion to suppress evidence that was found in her vehicle during a traffic stop, Ms. Rodriguez entered a plea of guilty to the indictment, with the condition that she could appeal the suppression ruling. This ruling is the only issue on appeal. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's denial of her motion to suppress.

## I. BACKGROUND

On December 1, 2004, Oklahoma Highway Patrol Trooper Cody Hyde stopped Ms. Rodriguez for having a defective tag lamp. At his request, she joined him in his patrol car while he checked her registration and wrote her a warning citation. During this time, Trooper Hyde asked Ms. Rodriguez a number of questions related to her travel plans. Ms. Rodriguez clearly was not fluent in English, and Trooper Hyde sometimes interspersed a Spanish word in his questions to facilitate dialogue. Nonetheless, she knew and understood enough English to comply with Trooper Hyde's requests and explain to him that she was on her way to Atlanta to purchase a truck. After writing Ms. Rodriguez the warning citation, he returned her license and registration, told her she did not have to pay any money, and to be careful on her trip.

Immediately after this, Trooper Hyde asked Ms. Rodriguez whether he could ask her a couple more questions. The district court found that Ms. Rodriguez responded "I don't . . . . Do I need to take the paper to get my taillight

2

or my license tag light fixed?"  Rec. vol. II, at 9 (Tr. of Suppression Hr'g, dated Feb. 16, 2005).  Trooper Hyde answered this question, and then proceeded to ask her whether she had any guns in her car, and whether she had any drugs like marijuana or cocaine in the car.  Ms. Rodriguez, without hesitation, answered "no" to each of these questions.  When Trooper Hyde asked whether he could search the car, she replied "yes."  During the search, Trooper Hyde located cocaine in Ms. Rodriguez's vehicle.

The Government indicted Ms. Rodriguez for one count of possession of cocaine with intent to distribute.  She filed a motion to suppress the evidence found during the search of her vehicle, arguing (1) that Trooper Hyde lacked reasonable suspicion to search, and that she did not consent to the extension of the traffic stop, and (2) that Ms. Rodriguez did not give knowing and intelligent consent to search her vehicle because she was unable to communicate meaningfully with Trooper Hyde.  At a hearing, where the parties stipulated to the admission of a videotape of the stop, the district court denied Ms. Rodriguez's motion to suppress.  The district court found that "[d]uring that exchange [where the Trooper asked additional questions], there was no hesitation on [Ms. Rodriguez's] part, at all, which leads me to believe that she fully understood the questions that were being asked and intelligently made a decision [to] consent to a search and to consent to an extended stop."  *Id.*

Ms. Rodriguez pleaded guilty to the one-count indictment, with the

3

condition that she could appeal the district court's decision on the suppression motion. The district court sentenced her to 71 months' imprisonment, plus a term of 60 months' supervised release. This appeal followed, with Ms. Rodriguez raising the same two arguments that she did below.

## II. DISCUSSION

In reviewing a denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). Those findings include determinations of credibility, the weight to be given to the evidence, as well as reasonable inferences and conclusions that may be drawn from the evidence. *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). The question of whether an individual consented to a search of the vehicle is a question of fact that we review for clear error. *United States v. Rosborough*, 366 F.3d 1145, 1149 (10th Cir. 2004). We view the evidence in the light most favorable to the government, but the "ultimate determination of reasonableness under the Fourth Amendment . . . is a question of law which we review de novo." *Bradford*, 423 F.3d at 1156.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S.

648, 653 (1979). Because a routine traffic stop is more analogous to an investigative detention than a full custodial arrest, we analyze a traffic stop under the principles of *Terry v. Ohio*, 392 U.S. 1 (1968).

Under *Terry*, to determine whether an investigative detention or traffic stop was reasonable, we ask two questions: first, whether the stop was justified at its inception, and second, whether the scope of the detention was reasonably related to the circumstances that justified the stop. *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2001). Ms. Rodriguez does not challenge the validity of Trooper Hyde's initial stop of her vehicle. Therefore, we proceed to her contention that Trooper Hyde impermissibly exceeded the scope of that detention by asking her questions unrelated to the traffic stop after he had issued her a warning citation.

A.    Extension of Traffic Stop

"[D]uring [a justified] stop, an officer may ask routine questions about the driver's travel plans." *Bradford*, 423 F.3d at 1156. "After the officer has issued the citation, however, the driver must be allowed to proceed on his way, without being subject to further delay by the police if he has produced a valid license and proof that he is entitled to operate the car." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001) (internal quotation marks omitted). "[F]urther detention for purposes of questioning unrelated to the initial stop is impermissible unless (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or (2) the initial detention has

5

become a consensual encounter." *Bradford*, 423 F.3d at 1156-57.

"A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). "Whether an encounter can be deemed consensual depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." *Id.* (internal quotation marks omitted). "The government bears the burden of proving voluntary consent based on the totality of the circumstances." *United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005).

Here, the district court found that although Trooper Hyde and Ms. Rodriguez had some problems communicating, she did not hesitate to answer his questions. This lack of hesitation, coupled with the court's examination of the entire videotape of the encounter, led the court to conclude that "she fully understood the questions that were being asked and intelligently made a decision to . . . consent to an extended stop." Rec. vol. II, at 9.

After reviewing the videotape, we cannot say that the district court's findings were clearly erroneous. Ms. Rodriguez and Trooper Hyde clearly had some trouble communicating, but they also were able to communicate effectively in some instances. Although Ms. Rodriguez did not explicitly consent to

6

remaining with Trooper Hyde to answer additional questions, she appeared to understand and easily answer his questions. Moreover, Ms. Rodriguez admits that Trooper Hyde had returned her license and registration before he began to ask her additional questions. Finally, as the district court stated, "[o]n the key questions regarding possession of guns or drugs she answered unequivocally and without hesitation in the negative. When ask[ed] if she would consent to a search of her automobile, she responded unhesitatingly in the affirmative." Rec. vol. I, doc. 13, at 1-2 (Dist. Ct. Order, filed Feb. 17, 2005).

Significantly, the district court did not find, and Ms. Rodriguez does not argue, that Trooper Hyde made any overbearing show of authority when he continued to ask her questions. Rather, she relies on a Ninth Circuit case and contends that unless a person is explicitly told that she is free to leave then a reasonable person would not have concluded that she is free to exit the patrol car. *See United States v. Chavez-Valenzuela*, 268 F.3d 719, 725 (9th Cir. 2001) ("Upon returning [the defendant's] documents, [the officer] then asked him a question implying that he suspected [the defendant] of criminal activity. Confronted with this situation, a reasonable motorist–even with license and registration in hand– most likely would not have believed he could disregard the officer's inquiry and end the conversation."). Ms. Rodriguez also argues that she was improperly detained because she did not explicitly consent to continuing the encounter.

7

We disagree.  In this circuit, when considering whether an individual voluntarily consents to an encounter, we look to the "totality of the circumstances," and do not require "that law enforcement advise . . . that a citizen may terminate the encounter, though this . . . may be considered in a totality of the circumstances approach to voluntariness."  *Gregoire*, 425 F.3d at 879.  "An officer is not required to inform a suspect that she does not have to respond to his questioning or that she is free to leave."  *Bradford*, 423 F.3d at 1158.  Ms. Rodriguez's situation is very similar to the defendant's in *Bradford*, where we explained that a reasonable person in the defendant's position would have known that she was free to leave.

> Although we are troubled by the fact that [the defendant] was sitting in the patrol car while [the officer] questioned her after handing back her documents, there is no indication here that [the officer] made any coercive show of authority . . . suggesting that the detention had not ended. . . . Thus, after [the officer] handed back the documents, the traffic stop was over, and they were engaged in a consensual encounter.

*Id.* at 1159 (internal quotation marks and citation omitted).

We therefore conclude that the district court's finding that Ms. Rodriguez voluntarily consented to the extended encounter with Trooper Hyde was not clearly erroneous.  Because Ms. Rodriguez consented to the extension of the traffic stop, no Fourth Amendment violation occurred.  We next consider whether Ms. Rodriguez voluntarily consented to the search of her vehicle.

B.    Consent to Search Vehicle

8

Consent to further detention does not automatically give an officer permission to search a suspect's vehicle. We have held that a vehicle may be searched without probable cause "if a person in control of the vehicle has given his voluntary consent to the search." *Zubia-Melendez*, 263 F.3d at 1162. "Whether voluntary consent was given is a question of fact, determined by the totality of the circumstances and reviewed for clear error." *Id.*

Ms. Rodriguez challenges Trooper Hyde's search of her car, arguing that her consent was invalid because it was the fruit of an unlawful detention. But because we held above that her detention for additional questioning was not unlawful, this argument fails. We therefore proceed to Ms. Rodriguez's additional argument, that she could not have given voluntary and intelligent consent to the search of her vehicle because of the language barrier between her and Trooper Hyde.

"We have developed a two-step test for determining the voluntariness of a consent to search: the government must (1) proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given, and (2) prove that this consent was given without implied or express duress or coercion." *United States v. Sanchez*, 89 F.3d 715, 719 (10th Cir. 1996) (internal quotation marks omitted).

Our application of this test in *Zubia-Melendez* is particularly instructive. There, the defendant, like Ms. Rodriguez, spoke only limited English and had

9

some difficulty communicating with the trooper. The defendant initially refused to allow the trooper to search his vehicle, but after being asked a second time for consent to search replied "Yeah, no matter." 263 F.3d at 1163. At the suppression hearing, the defendant testified and admitted that he understood some of the officer's questions regarding his name, identification, and ownership of the vehicle. Nonetheless, the defendant contended that he had insufficient familiarity with the English language to have given knowing and voluntary consent.

In reviewing the district court's finding of consent, we stated that "[the defendant's] consent appears to have come without hesitation when he was asked a second time for permission to search the vehicle." *Id*. Moreover, "the district court specifically found . . . that [the defendant and trooper] could converse sufficiently to understand one another." *Id*. (internal quotation marks omitted). Additionally, we explained that the fact that the trooper had "neither told [the defendant] he was free to leave nor informed him that he could refuse consent . . . should be considered in determining whether consent was voluntary." *Id*. Our review of the videotape evidence, however, revealed no physical or verbal coercion on the part of the trooper. In light of the totality of the circumstances, we acknowledged that the question "is a close one," but held that the district court's finding that the defendant had given voluntary consent was not clearly erroneous. *Id*.

Ms. Rodriguez's and Trooper Hyde's interaction was similar to the

10

situation in *Zubia-Melendez*. Here, the district court acknowledged that Ms. Rodriguez had some trouble communicating with Trooper Hyde, but explicitly found that, when she was asked for her consent to search, "there was no hesitation on the defendant's part, at all," and that "she [was] understanding the majority of what was being said to her." Rec. vol. II, at 9. Although Trooper Hyde did not inform Ms. Rodriguez she was free to leave and free to refuse consent, like in *Zubia-Melendez*, our review of the videotape evidence does not reveal, nor does Ms. Rodriguez allege, that Trooper Hyde exerted any kind of physical or verbal coercion. Thus, based on the totality of the circumstances, we cannot conclude that the district court clearly erred in finding that Ms. Rodriguez gave knowing and voluntary consent to search her vehicle. Because Ms. Rodriguez consented to the search, the Fourth Amendment's prohibition against searching a vehicle without probable cause is not applicable.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Ms. Rodriguez's motion to suppress.

Entered for the Court,


Robert H. Henry
Circuit Judge

11