**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 31 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

No. 03-5018

DAVID RICHARD TAVERNA,

    Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CR-28-K)**

---

Submitted on the briefs.[*]

David E. O'Meilia, United States Attorney, and Chad A. Greer, Assistant United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

Charles Wender, Boca Raton, Florida, for Defendant-Appellant.

---

Before **MURPHY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

    [*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

A grand jury indicted Defendant David Taverna for possession of marijuana with the intent to distribute in violation of 21 U.S.C. §§ 841(a), (b). The district court denied Defendant's motion to suppress evidence law enforcement seized from his vehicle. Defendant entered a conditional guilty plea and reserved the right to appeal. See Fed. R. Crim. P. 11(a)(2). On appeal, Defendant claims the search of his vehicle violated the Fourth Amendment. Defendant also claims the absence of a verbatim transcript of a videotape played at the suppression hearing denied him a meaningful appeal. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

## I.

At the suppression hearing, Oklahoma Trooper Branson Perry testified that he was patrolling Interstate-44 on February 4, 2002. At approximately 3:27 p.m., Trooper Perry observed a Ford pickup change lanes without signaling. Trooper Perry stopped Defendant after observing this traffic violation. After some preliminary discussions with Defendant, Trooper Perry asked Defendant to come back to his patrol car.

In the patrol car, Trooper Perry conversed with Defendant while writing out a failure-to-signal warning. Trooper Perry called dispatch to ensure the vehicle was properly registered and Defendant's driver's license was valid. Dispatch reported that everything "seemed to be fine." Trooper Perry returned Defendant's documents and issued him a warning. After another brief conservation, Defendant exited the patrol car.

2

As Defendant was returning to his vehicle, Trooper Perry "hollered" or "called" to Defendant. When Defendant turned around, Trooper Perry asked if he had a minute to visit about a few more things. Defendant responded "yes" and returned to the patrol car. Trooper Perry asked Defendant if he had any guns or alcohol and he responded "one hundred percent no." Trooper Perry then asked Defendant if he had marijuana. This question prompted Defendant to sink in his seat, drop his head, and calmly respond "no."

Next, Trooper Perry asked Defendant for consent to search his vehicle. Initially, Defendant would not answer the trooper's question; however, upon being asked again Defendant said "if you need to." Trooper Perry explained that the decision was Defendant's and asked him for consent again. This time, Defendant responded "if you'd like." During this exchange, Trooper Perry never asked Defendant any questions in a "commanding tone," nor did he display his weapon. During the search of Defendant's vehicle, law enforcement uncovered approximately 500 pounds of marijuana.

Following the suppression hearing, the district court found that Defendant: (1) consented to additional questioning after he received his driver's license back and exited the patrol car; (2) consented to reenter the patrol car; (3) consented to the search of his vehicle; (4) voluntarily consented without duress or coercion; (5) did not limit the scope of the search in any manner; and (6) did not revoke his consent. Based on these findings, the district court denied Defendant's motion to suppress the evidence seized during the search of his vehicle.

## II.

At a hearing on a motion to suppress, the district judge assesses the credibility of witnesses and determines the weight to be given to the evidence. United States v. Caro, 248 F.3d 1240, 1243 (10th Cir. 2001). After the suppression hearing, the district court "must state its essential findings on the record." Fed. R. Crim. P. 12(d). We accept the district court's findings unless clearly erroneous and view the evidence in the light most favorable to those findings and the Government. United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997). We review the district court's ultimate determination of the reasonableness of the search under the Fourth Amendment *de novo*. United States v. Villa-Chaparro, 115 F.3d 797, 801 (10th Cir. 1997).

## A.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop is a seizure under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). "The touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991). A traffic stop is reasonable if: (1) "the officer's action was justified at its inception[;]" and (2) "the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Bustillos-Munoz, 235 F.3d 505, 512 (10th Cir. 2000) (internal quotations and citations omitted). A traffic stop is justified at its inception if it is based on an observed traffic violation. United States v. Callarman, 273 F.3d 1284, 1286

(10th Cir. 2001). Under Oklahoma law, a driver commits a traffic violation if he fails to signal when changing lanes. 47 Okla. Stat. Ann. § 11-309(1).

"[A]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." Caro, 248 F.3d at 1244. If the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to leave after the officer has issued the citation. United States v. Zubia-Melendez, 263 F.3d 1155, 1161 (10th Cir. 2001). After the initial stop has ended, further questioning by an officer is only permissible if the officer has a reasonable suspicion that the driver is engaged in illegal activity *or* the driver voluntarily consents to additional questioning. United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994).

If the driver voluntarily consents to additional questioning, he is no longer seized for purposes of the Fourth Amendment because he is free to leave. United States v. Werking, 915 F.2d 1404, 1408 (10th Cir. 1990). However, "returning a driver's documentation may not end the detention if there is evidence of 'a coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled.'" Bustillos-Munoz, 235 F.3d at 515 (quoting United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991)). In the latter situation, the Fourth Amendment is implicated because a reasonable person would not feel free to leave. See id. at 514.

5

An officer may conduct a warrantless search of a vehicle without violating the Fourth Amendment if the person in control of the vehicle voluntarily consents to the search. Zubia-Melendez, 263 F.3d at 1162. "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances[.]'" Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)). We have a two-part test for determining the validity of a consent search. United States v. Sanchez, 89 F.3d 715, 719 (10th Cir. 1996). Under this test, the Government must: (1) "'proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given'"; and (2) "'prove that this consent was given without implied or express duress or coercion.'" Id. (quoting United States v. McRae, 81 F.3d 1528, 1537 (10th Cir. 1995)).

## B.

Defendant "does not contest the validity of the initial stop." Rather, Defendant argues Trooper Perry conducted a warrantless search of his vehicle in violation of the Fourth Amendment because he did not voluntarily consent (1) to reenter Trooper Perry's patrol car, or (2) to the actual search of his vehicle. Defendant argues he was illegally detained after the initial stop because the second detention was the product of duress or

coercion.[1]  Defendant asserts that because Trooper Perry "hollered" at him as he was walking back to his vehicle, he had no choice but to succumb to the trooper's "command."  Since "hollered" means "shout or yell," Defendant postulates that a reasonable person would not have felt free to leave the scene with a shouting officer.  As additional evidence of coercion or duress, Defendant points out that Trooper Perry was in a uniform (and thus armed) and accompanied by a canine.  He further points out that Trooper Perry never informed him that he was free to leave.

We reject Defendant's argument because it is premised on inferences drawn from facts that are not in the record.  Trooper Perry "hollered" or "called" to Defendant to get his attention as he was walking away from the trooper's patrol car.  We, like the district court, do not believe this is evidence of coercion based on Trooper Perry's testimony at the suppression hearing and the videotape of the arrest.  Trooper Perry asked Defendant if he had a few minutes to visit about things.  Defendant responded "yes" and voluntarily returned to the patrol car.  In the patrol car, Trooper Perry did not ask Defendant any questions in a commanding tone and did not display his weapon.  Defendant has pointed to no evidence demonstrating that Trooper Perry used a coercive show of authority that would support a finding of express or implied coercion.  Further, Trooper Perry was not

---

[1] Defendant also argues that he was illegally detained because Trooper Perry did not have an objectively reasonable and articulate suspicion that he was engaged in illegal activity.  We do not have to address whether Trooper Perry had a reasonable suspicion to believe Defendant was engaged in illegal activity because we hold Defendant consented to additional questioning.

7

required to inform Defendant he was free to leave, Robinette, 519 U.S. at 39-40, nor is it material that Trooper Perry was in his uniform when he asked Defendant if he would consent to additional questioning. Werking, 915 F.2d at 1409. The district court's conclusion that Defendant voluntarily consented to additional questioning is not clearly erroneous.[2]

Defendant also argues he did not voluntarily consent to the search of his vehicle because a reasonable person could not give voluntary consent to search while sitting in a police car, in the presence of two armed police officers and a patrol dog, after being detained for ten minutes, and asked multiple times to give consent. Defendant, however, fails to recognize that when he gave consent to search the car he was not detained. At that time, only Trooper Perry (and the dog) were in the car. Trooper Gene Hise did not arrive on the scene until after Defendant consented to the search his vehicle. Trooper Perry explained to Defendant that he had to decide whether to grant consent for the search. When Trooper Perry asked for consent, Defendant replied "if you'd like." This testimony provides evidence that Defendant's consent was unequivocal, specific, and freely and intentionally given. Defendant was free to leave or revoke his consent at any time during the search and Defendant did not exercise these rights. Accordingly, we hold the Defendant voluntarily consented to the search of his vehicle.

---

[2] As Defendant recognizes, we need not address his "taint argument" because we have concluded that he voluntarily consented to additional questioning.

8

## III.

Defendant next claims the absence of a verbatim transcript of the videotape played at the suppression hearing denied him a meaningful appeal. A camera mounted in Trooper Perry's patrol car videotaped Defendant's traffic stop. At the suppression hearing, the district court received the videotape into evidence. During the suppression hearing, the Government would play a portion of the videotape, stop the tape, and ask Trooper Perry questions regarding that portion of the videotape. The court reporter, however, did not transcribe the videotaped conversations nor provide any notation that clearly identified the specific portion of the videotape that was being played.

### A.

The Court Reporter's Act requires all criminal proceedings held in open court be recorded verbatim. 28 U.S.C. § 753(b); Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993). In relevant part, § 753(b) provides:

> Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method . . . Proceedings to be recorded under this section include (1) all proceedings in criminal cases had in open court . . . .

Section 753(b) of the Court Reporter's Act "is mandatory and the court has the duty to require compliance." Parrot v. United States, 314 F.2d 46, 47 (10th Cir. 1963). Furthermore, court reporters "are afforded no discretion in the carrying out of this duty; they are to record, as accurately as possible, what transpires in court." Antoine, 508 U.S.

9

at 436. "[T]he Court Reporter's Act was enacted for the protection of the parties and of the court and to the end that justice may be served by having available an adequate record[.]" Edwards v. United States, 374 F.2d 24, 26 n.2 (10th Cir. 1966).

In a criminal case, the plain language of § 753(b) is violated if the court reporter fails to transcribe videotaped evidence played in open court. See 28 U.S.C. § 753(b). We agree with the Eleventh Circuit that § 753(b) of the Court Reporter's Act requires a verbatim transcription of all videotaped evidence presented in open court in a criminal case; or, absent comprehensive recordation, the court reporter should provide some notation in the record that clearly identifies the specific portion of the videotape that is being played for the court or jury. See United States v. Charles, 313 F.3d 1278, 1282 (11th Cir. 2002). Such recordation or notation is particularly warranted if specific testimony is proffered pertaining to particular sections of the videotaped evidence. Id.

Failure to comply with the Court Reporter's Act, however, is not *per se* prejudicial error. United States v. Chavez, 862 F.2d 1436, 1437-38 (10th Cir. 1988). Rather, and in accordance with the purpose of the Act, "reversible error occurs when 'the unavailability of a transcript makes it impossible for the appellate court to determine whether or not prejudicial error was committed' with regard to a challenged action." United States v. Haber, 251 F.3d 881, 889 (10th Cir. 2001) (quoting Edwards, 374 F.2d at 26). Ordinarily, reversible error will not occur under § 753(b) of the Act when the court reporter fails to transcribe taped evidence played in open court, if the tape is admitted into evidence and is

10

part of the record on appeal. In that situation, the appellate court can review the evidence itself to determine whether prejudicial error has occurred. See Charles, 313 F.3d at 1283 (holding defendants were not entitled to a new trial when the court reporter failed to transcribe videotaped evidence played at trial; appellate court was able to examine the evidence and satisfy itself that prejudicial error did not occur); United States v. Doyle, 786 F.2d 1140, 1442 (9th Cir. 1986) (holding that the court reporter's failure to transcribe audiotapes played at trial did not warrant reversal of defendant's conviction; appellate court could review the tapes, which were available as part of the record on appeal, for prejudicial error).

## B.

Defendant does not contend that the transcript omissions make appellate review impossible, nor does he allege he suffered any specific prejudice as a result of the omissions. Moreover, Defendant's appellate counsel never moved to correct or modify the record in this case pursuant to Fed. R. App. P. 10(e). Rather, Defendant argues that he is entitled to a new suppression hearing because his appellate counsel, who is different from his trial counsel, does not know what portions of the videotape the district court actually viewed. We rejected a similar argument in Haber, and required some showing of prejudice before reversing on the basis of non-compliance with the Court Reporter's Act. Haber, 251 F.3d at 889-90.

11

We have carefully reviewed the record, including the videotaped evidence. We are satisfied Defendant did not suffer any prejudice by the violation of the Court Reporter's Act. See id. In the future, however, all district courts should ensure that all criminal proceedings in open court are transcribed in accordance with this opinion, and the Government or Defendant should be sure to create a record for appeal by identifying the portions of the videotape played at the suppression hearing.

AFFIRMED.