**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GREGORY LEE GABALDON,

    Defendant - Appellant.

No. 05-3231
(D. Ct. No. 04-CR-40100-01-RDR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **ANDERSON**, and **HARTZ**, Circuit Judges.

After the District Court denied Defendant-Appellant Gregory Lee Gabaldon's

motion to suppress 213 pounds of marijuana discovered in his car following a traffic stop,

Mr. Gabaldon pleaded guilty to possessing with intent to distribute a controlled substance

under 21 U.S.C. § 841(a)(1). Mr. Gabaldon now appeals the District Court's denial of his

motion to suppress. Taking jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

At around 8:00 a.m. on July 27, 2004, Mr. Gabaldon was pulled over by Deputy

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Sheriff Kelly Schneider for crossing the fog line on the right side of the road, which is a violation of Kansas state law. After Mr. Gabaldon's vehicle came to a stop, Deputy Schneider motioned to Mr. Gabaldon to meet him between the police cruiser and Mr. Gabaldon's vehicle, where Deputy Schneider informed Mr. Gabaldon that he had crossed the white line on the road and asked if he was awake. Deputy Schneider then asked for Mr. Gabaldon's driver's license and registration. As Mr. Gabaldon returned to his car to retrieve the documents, Deputy Schneider also walked to the car, where he saw several coolers in the back seat. At least one of the coolers appeared to be sealed with silicone. During this time, Deputy Schneider asked Mr. Gabaldon about his travel plans. He replied that he and his passenger were traveling from Scottsdale to Chicago on vacation, that they were going to a friend's birthday party there, and that the friend was his passenger's cousin.

After running a check on Mr. Gabaldon's license and registration, Deputy Schneider gave him a warning ticket and returned his license and registration. Deputy Schneider then told Mr. Gabaldon to "be careful" and to "drive safely." The two men began walking away from each other. After a few steps, however, Deputy Schneider turned and said, "Hey, you mind if I ask you another question?" The following dialogue then took place:

Mr. Gabaldon:          What?
Deputy Schneider:      Mind if I ask you another question?
Mr. Gabaldon:          What's that?
Deputy Schneider:      We have a lot of illegal contraband up and down this road and illegal weapons. You don't have anything like that?

| Mr. Gabaldon: | No. |
| Deputy Schneider: | Mind if I take a look in your car? |
| Mr. Gabaldon: | Yeah, I do. |
| Deputy Schneider: | Why? |
| Mr. Gabaldon: | [unintelligible] |
| Deputy Schneider: | How about I run a dog around your vehicle? |
| Mr. Gabaldon: | What? |
| Deputy Schneider: | How about I run a dog around your vehicle? |
| Mr. Gabaldon: | Around the vehicle? |
| Deputy Schneider: | Yeah.  You don't mind? |
| Mr. Gabaldon: | No. |

The District Court found that during this conversation, Deputy Schneider used a conversational tone of voice and did not raise it.  Nor did he command or instruct Mr. Gabaldon.  In addition, he did not draw or even touch his gun.  Thereafter, Deputy Schneider's drug dog alerted to the vehicle, and a search resulted in the discovery of 44 packages of marijuana weighing approximately 213 pounds.

After he was indicted and charged with one count of possession with intent to distribute a controlled substance, Mr. Gabaldon filed a pretrial motion to suppress the drugs found in his vehicle.  The District Court held an evidentiary hearing on the matter and denied the motion, concluding that under the totality of the circumstances, Mr. Gabaldon voluntarily consented to further questioning and voluntarily gave consent to the dog sniff.  The court's conclusion was based in part on the following findings:

> The court finds no evidence of coercion by Deputy Schneider.  Deputy Schneider indicated to the defendant that he was free to go when he told him, "Be careful."  The defendant displayed a willingness to answer the questions posed by Deputy Schneider.  He gave no indication that he did not wish to engage in a conversation with Deputy Schneider.  The court finds that the defendant voluntarily consented to answer the questions posed

by Deputy Schneider and that he voluntarily consented to the drug sniff of his vehicle.

Mr. Gabaldon subsequently pleaded guilty on the condition he be permitted to appeal the District Court's ruling. On appeal, he argues that Deputy Schneider's line of questioning after the stop concluded effectively detained him without reasonable suspicion or valid consent and therefore his ensuing consent to the dog sniff and the discovery of the marijuana was inadmissible as "fruit of the poisonous tree." Mr. Gabaldon further argues that even if he was not unlawfully detained, his consent to search the vehicle was coerced and therefore involuntary.

## II. DISCUSSION

A.      Standard of Review

"In reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and we view the evidence in the light most favorable to those findings." *United States v. Wallace*, 429 F.3d 969, 974 (10th Cir. 2005). We review de novo a district court's determination that a search or seizure is reasonable under the Fourth Amendment. *Id.*

B.      Merits

A traffic stop is reasonable, and therefore permissible under the Fourth Amendment, if (1) "the officer's action was justified at its inception[;]" and (2) "the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Bustillos-Munoz*, 235 F.3d 505, 512 (10th

Cir. 2000) (internal quotations and citations omitted). During a stop, an officer may request a driver's license and issue a citation. *United States v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003). Once the officer gives a citation, however, the driver must be permitted to leave. *Id.* Further questioning "is only permissible if the officer has a reasonable suspicion that the driver is engaged in illegal activity or the driver voluntarily consents to additional questioning." *Id.* at 877–88 (emphasis omitted). Mr. Gabaldon does not contest the validity of the stop; rather, he maintains that he did not voluntarily consent to the encounter and that Deputy Schneider did not have reasonable suspicion of illegal activity.[1]

Whether an encounter is consensual is a fact-intensive question involving the totality of the circumstances. *United States v. Elliott*, 107 F.3d 810, 813–14 (10th Cir. 1997). This court has recognized certain factors as significant when determining whether an encounter is consensual, including the number of police officers at the scene, whether the officer "displayed his weapon, physically touched the driver, or used a commanding tone of voice indicating that compliance might be compelled." *Wallace*, 429 F.3d at 975. The District Court found that none of these indicia of coercion were present in this case.

Mr. Gabaldon does not challenge this factual finding, nor does he point to any other specific actions taken by Deputy Schneider that support his assertion that the encounter was not consensual. Instead, Mr. Gabaldon argues that the court should give

---

[1] Because we conclude that Mr. Gabaldon consented to the encounter, we do not reach the question of reasonable suspicion.

greater weight to a citizen's perception of the authority held by law enforcement officers, as well as the difficulty a citizen may have determining whether a police officer's questions should be interpreted as instructions or commands. We have consistently rejected this argument, and have specifically held that without other indicia of coercion, "the fact that [the person posing the questions] was a uniformed police officer . . . is insufficient to prove [the defendant] was 'seized' within the meaning of the fourth amendment." *United States v. Werking,* 915 F.2d 1404, 1409 (10th Cir. 1990) (citing *United States v. Mendenhall*, 446 U.S. 544, 555 (1980)); *see also Elliott*, 107 F.3d at 814; *United States v. Turner*, 928 F.2d 956, 959 (10th Cir. 1991).

We also disagree with Mr. Gabaldon's contention that his initial refusal to permit Deputy Schneider to search inside his vehicle indicates the encounter was nonconsensual. To the contrary, in this case Mr. Gabaldon's refusal demonstrates he understood that he could, in fact, disregard Deputy Schneider's request. We therefore conclude that the line of questioning posed to Mr. Gabaldon after Deputy Schneider issued the citation occurred in a consensual encounter, and, accordingly, did not implicate the Fourth Amendment. The discovery of the marijuana is therefore not "fruit of the poisonous tree." *See United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001) (evidence will be suppressed as "fruit of the poisonous tree" only upon a determination that the detention was unlawful).

Mr. Gabaldon's next argument—that despite the legality of the encounter, his consent to the dog search was not voluntary—fails for similar reasons. Like the determination whether an encounter is a detention or consensual, the question of whether

a person freely and voluntarily consents to a search during a consensual encounter with a police officer is a question of fact to be determined from the totality of circumstances. *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999). This analysis involves a two-part test. *United States v. Sanchez*, 89 F.3d 715, 719 (10th Cir. 1996). "[T]he government must: (1) proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given and (2) prove that this consent was given without implied or express duress or coercion." *Id.* (quotations omitted).

With respect to the first factor, there is no serious question that Mr. Gabaldon unequivocally and intelligently consented. When asked if he minded if Deputy Schneider brought the dog out to check the vehicle, Mr. Gabaldon clearly said no. There is no evidence in the record indicating that Mr. Gabaldon did not understand the request. As to the second factor, we noted above that none of the typical indicia of coercion were present during the dialogue between Deputy Schneider and Mr. Gabaldon and that Deputy Schneider's position as a law enforcement officer, alone, is not a sufficient indicator of coercion. Mr. Gabaldon's consent to the dog sniff was therefore voluntary.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's order denying Mr.

Gabaldon's motion to suppress.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge